# NATIONAL LABOR RELATIONS BOARD *v.* BURNUP & SIMS, INC.

No. 15.   Argued October 15, 1964.—Decided November 9, 1964.

*Arnold Ordman* argued the cause for petitioner.   With him on the brief were *Solicitor General Cox, Dominick L. Manoli* and *Norton J. Come.*

*Erle Phillips* argued the cause and filed a brief for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Two employees in respondent's plant, Davis and Harmon, undertook to organize the employees who worked there.   The Superintendent was advised by another employee, one Pate, that Davis and Harmon, while soliciting him for membership in the union, had told him the union would use dynamite to get in if the union did not acquire the authorizations.   Respondent thereafter discharged Davis and Harmon because of these alleged state-

ments. An unfair labor practice proceeding was brought. The Board held that the discharges violated §§ 8 (a)(1) and 8 (a)(3) of the Act,[1] 61 Stat. 136, 140–141, 29 U. S. C. §§ 158 (a)(1) and (a)(3). It found that Pate's charges against Davis and Harmon were untrue and that they had actually made no threats against the company's property; and it concluded that respondent's honest belief in the truth of the statement was not a defense. 137 N. L. R. B. 766, 772–773.

The Court of Appeals refused reinstatement of Davis and Harmon, holding that since the employer acted in good faith, the discharges were not unlawful. 322 F. 2d 57. We granted the petition for certiorari because of a conflict among the Circuits. Cf. with the opinion below *Labor Board* v. *Industrial Cotton Mills*, 208 F. 2d 87; *Labor Board* v. *Cambria Clay Products Co.*, 215 F. 2d 48; *Cusano* v. *Labor Board*, 190 F. 2d 898.

We find it unnecessary to reach the questions raised under § 8 (a)(3) for we are of the view that in the context of this record § 8 (a)(1) was plainly violated, whatever the employer's motive.[2] Section 7 grants employees,

---

[1] Sections 8 (a)(1) and (3) read as follows:

"It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

. . . . .

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ."

[2] As an alternative ground for its finding that the Act had been violated, the Board held that Pate's allegation was merely "seized up[on]" by the respondent as an "excuse" for the discharges of Davis and Harmon. 137 N. L. R. B. 766, 772–773. The Court of Appeals, however, rejected without discussion this suggestion of the existence of anti-union bias. 322 F. 2d 57, 59, 61. In its petition for writ of certiorari the Board expressly stated that "The propriety of this action [by the Court of Appeals] is not questioned here." In light

*inter alia,* "the right to self-organization, to form, join, or assist labor organizations." Defeat of those rights by employer action does not necessarily depend on the existence of an anti-union bias. Over and again the Board has ruled that § 8 (a)(1) is violated if an employee is discharged for misconduct arising out of a protected activity, despite the employer's good faith, when it is shown that the misconduct never occurred. See, *e. g., Mid-Continent Petroleum Corp.,* 54 N. L. R. B. 912, 932–934; *Standard Oil Co.,* 91 N. L. R. B. 783, 790–791; *Rubin Bros. Footwear, Inc.,* 99 N. L. R. B. 610, 611.[3] In sum, § 8 (a)(1) is violated if it is shown that the discharged employee was at the time engaged in a protected activity, that the employer knew it was such, that the basis of the discharge was an alleged act of misconduct in the course of that activity, and that the employee was not, in fact, guilty of that misconduct.

That rule seems to us to be in conformity with the policy behind § 8 (a)(1). Otherwise the protected activity would lose some of its immunity, since the example of employees who are discharged on false charges would or might have a deterrent effect on other employees. Union activity often engenders strong emotions and gives rise to active rumors. A protected activity acquires a precarious status if innocent employees can be discharged while engaging in it, even though the employer acts in good faith. It is the tendency of those

---

of this concession it is unnecessary for us to determine whether the Board's alternative finding of a discriminatory motivation is supported by substantial evidence.

[3] The *Rubin Bros.* case made a qualification as to burden of proof. Prior thereto the burden was on the employer to prove that the discharged employee was in fact guilty of the misconduct. *Rubin Bros.* said that "once such an honest belief is established, the General Counsel must go forward with evidence to prove that the employees did not, in fact, engage in such misconduct." 99 N. L. R. B., at 611.

discharges to weaken or destroy the § 8 (a)(1) right that is controlling. We are not in the realm of managerial prerogatives. Rather we are concerned with the manner of soliciting union membership over which the Board has been entrusted with powers of surveillance. See *Garment Workers* v. *Labor Board,* 366 U. S. 731, 738–739; *Labor Board* v. *Erie Resistor Corp.,* 373 U. S. 221, 228–229. Had the alleged dynamiting threats been wholly disassociated from § 7 activities quite different considerations might apply.

*Reversed.*

MR. JUSTICE HARLAN, concurring in part and dissenting in part.

Both the rule adopted by the lower court and that now announced by this Court seem to me unacceptable. On the one hand, it impinges on the rights assured by §§ 7 and .8 (a)(1) to hold, as the Court of Appeals did, that the employee must bear the entire brunt of his honest, but mistaken, discharge. On the other hand, it is hardly fair that the employer should be faced with the choice of risking damage to his business or incurring a penalty for taking honest action to thwart it.

Between these two one-way streets lies a middle two-way course: a rule which would require reinstatement of the mistakenly discharged employee and back pay only as of the time that the employer learned, or should have learned, of his mistake, subject, however, to a valid business reason for refusing reinstatement.[1] Such a rule gives offense neither to any policy of the statute nor to the dictates of fairness to the employer, and in my opinion represents a reasonable accommodation between the two inflexible points of view evinced by the opinions below and here.

---

[1] As for example, if a replacement had been hired and the discharged employee unduly delayed in apprising the employer of the mistake.

Since I do not believe that this case presents the rare situation in which the Board can ignore motive,[2] I would vacate the judgment of the Court of Appeals and remand the case to the Board for further appropriate proceedings in light of what I believe to be the proper rule.

---

[2] See *Teamsters Local* v. *Labor Board*, 365 U. S. 667, 677 (1961) (concurring opinion). Respondent here had a significant business justification—to avoid dynamiting of a silo—for discharging the employees, unlike the situations presented in *Allis-Chalmers Mfg. Co.* v. *Labor Board*, 162 F. 2d 435; *Cusano* v. *Labor Board*, 190 F. 2d 898, and *Labor Board* v. *Industrial Cotton Mills*, 208 F. 2d 87. See *Teamsters Local, supra,* at 680.

In *Allis-Chalmers* the employer downgraded the status of plant inspectors after they had voted to join a union, and it was apparent that the employer acted only because of the inspectors' membership in the union. There was no business justification for the employer's action except for his feeling that union members should not exercise supervisory powers and the Board was therefore justified in treating this as an unfair labor practice without a specific finding of discriminatory motive.

*Cusano* involved a mistaken belief by the employer that an employee had made a misstatement about company profits, which might well have been protected campaign "oratory" even if the employee had made the misstatement. Since the employer could simply have denied the truth of the profit figures, there was no business justification for discharging the employee.

*Industrial Cotton Mills* presents the closest analogy to the case before us. There an employee was refused reinstatement following a strike for alleged strike misconduct—throwing tacks on the street during a strike—which he did not commit. The Court of Appeals recognized the special congressional concern for the right to strike embodied in §§ 2 (3) and 13 of the Act, and held that the employer's lack of antiunion motive was irrelevant. There was also little business justification for punishing the employee after the strike had ended, unlike the fear in this case of future sabotage by the employees.