**NATIONAL MARITIME UNION OF AMERICA, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**Security Towing Company, Intervenor.**

No. 50, Docket 29435.

United States Court of Appeals Second Circuit.

Argued Oct. 19, 1965.

Decided Dec. 6, 1965.

Charles Sovel, New York City (Abraham E. Freedman, Stanley B. Gruber, New York City, on the brief), for petitioner.

Michael R. Brown, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., N. L. R. B., on the brief), for respondent.

Alan I. Berger, St. Louis, Mo. (V. Lee McMahon, St. Louis, Mo., on the brief), for intervenor.

Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge:

The National Maritime Union (the Union), pursuant to Section 10(f) of the National Labor Relations Act (the Act), 29 U.S.C. § 160(f), seeks review of an order of the National Labor Relations Board dismissing a complaint which alleged that Security Towing Company (the Company) by interrogating its employees and discharging eleven crew members of the river towboat "Tennes-

see" had violated Sections 8(a) (1) and (3) of the Act, 29 U.S.C. §§ 158(a) (1), (3).[1]

The Board adopted the Examiner's conclusion that the evidence was insufficent to show that an interrogation occurred, a conclusion which was based in part on the General Counsel's failure to produce witnesses who were allegedly present at the interrogation to rebut the company's denial of the charge. The record supports this finding and the Examiner did not abuse his discretion by relying on the absence of material witnesses who would have been in a position to contradict the accredited testimony of company witnesses. See NLRB v. Tennessee Consolidated Coal Co., 307 F. 2d 374, 378 (6th Cir. 1962); Wigmore, Evidence, §§ 285–87 (3d ed. 1940).

The Board also adopted the Examiner's finding that the discharge was not motivated by anti-union animus but, rather, that the company "had reasonable grounds to believe that both the officers and the unlicensed men did not intend to operate the vessel and it appears that they were ordered off the boat because of this belief." Trial Examiner's Decision No. 176–64 (March 31, 1964).[2] The initial issue on appeal is whether there is substantial evidence in the record, considered as a whole, to support the finding that the company discharged the crewmen only after they manifested an intent not to work. Upon learning that the ship's officers had ordered the Tennessee tied up in St. Louis until the Company complied with the Marine Officers Association's demand for recognition as the officers' bargaining representative, Company officials

Kitch and Flowers boarded the ship in hopes of getting it under way because it was scheduled to deliver a million dollar cargo to an ocean-going vessel in New Orleans within a week. Kitch testified that when he informed the crew in the lounge that they would have to operate the ship or depart, "there was no comment from the men * * * they got up and walked back to their rooms." While the Union points out that there were only three or four crewmen present in the lounge, both Kitch and Flowers testified that an identical offer to work or depart was tendered to "just about the whole crew" in the pilot house shortly after the lounge incident. Moreover, Flowers stated that the only reply to the pilot house offer was made by the ship's captain who declared that neither the officers nor the crew would depart until certain conditions were met. The examiner could properly infer that men who wanted to work would indicate their desire by at least saying so. In addition, Flowers' uncontradicted testimony warranted the inference that the ship's captain acted as the spokesman for the crew. In sum, the crew members' failure to disassociate themselves by word or act from the officers' strike provides ample justification for the conclusion that the company discharged them for refusing to obey orders to operate the ship.[3]

However, the Union contends that the fact that the discharge was in good faith provides no defense in light of NLRB v. Burnup & Sims, 379 U.S. 21, 85 S.Ct. 171, 13 L.Ed.2d 1 (1964).[4] There the Court found a Section 8(a) (1) violation where an employer discharged two employees solely on the basis of an inac-

---

1. The Board's order is reported at 150 N.L.R.B. No. 23 (Dec. 16, 1964).

2. The complaint also contained a § 8(a) (3) charge based on the fact that the replacement crew assembled by the company following the discharge did not include four company employees who were allegedly on shore duty at the time. The Board correctly adopted the Examiner's finding that no discriminatory motive was shown, for there was no indication that the men involved were available for work at the time.

3. Evidence presented by the Union to show that the crewmen continued to perform routine duties after the tie-up was correctly disregarded as immaterial, for it had no bearing on their inclination to sail the vessel.

4. Although the Examiner did not have the Burnup & Sims decision available in March 1964, the Board did in December 1964.

curate report that they threatened to engage in violence to effectuate their organizational campaign on the ground that a mistaken, i. e., in good faith, discharge of employees for misconduct arising out of protected activity is unlawful "when it is shown that the misconduct never occurred * * *" Id. at 23, 85 S.Ct. 171, 172. However, that decision does not control this case for we are not dealing with an employer's mistaken belief. In Burnup & Sims there was no suggestion that the discharged employees actually engaged in misconduct. By contrast, in this case, accepting the conclusions of the Examiner adopted by the Board, the Company had reasonable grounds to believe that the crewmen in concert with the officers were refusing to operate the vessel and the discharge constituted a valid exercise of the Company's right to remove strikers from its property.

The petition to review and set aside the Board's order is denied.