NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

PLASTIC APPLICATORS, INC.,
Respondent.

No. 23646.

United States Court of Appeals
Fifth Circuit.

Dec. 2, 1966.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Peter Giesey, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Melvin Pollack, Atty., N.L.R.B., for petitioner.

Richard C. Keenan, New Orleans, La., Rene A. Pastorek, Gretna, La., Kullman & Lang, New Orleans, La., for Plastic Applicators, Inc.

Before RIVES, WISDOM and AINSWORTH, Circuit Judges.

RIVES, Circuit Judge.

The Board petitions for enforcement of its order against Plastic Applicators,

Inc.[1] The Board found that Plastic Applicators violated section 8(a) (1) of the Labor-Management Relations Act[2] by discharging nine employees for concertedly engaging in a work stoppage for their mutual aid and protection. Before this Court, Plastic Applicators does not resist the findings of unlawful discharge and refusal to reinstate as to five of these employees.[3] As to those five, the Board's order will, of course, be enforced. As to the remaining four employees,[4] Plastic Applicators resists enforcement of the Board's order upon the ground that those four employees so conducted themselves as to deprive them of the protection afforded by the Act, or more specifically, that those four employees were justifiably discharged because of their assault upon employee Warnest Thibeaux.

Plastic Applicators maintains a plant in Morgan City, Louisiana, for the internal coating of oil field pipes. In November 1963, it employed at that plant between 20 and 30 men who operated in three shifts around the clock. On November 15, 1963, eight of the nine employees here involved signed cards authorizing the Union[5] to represent them in collective bargaining. The ninth employee had signed a card on the preceding day. On November 16, 1963, employees Buirden Jupiter and Frank Gray reported for work a few minutes after the 7 A.M. starting time and were immediately discharged for not being on time.[6] News of this action and of the discharge on the previous night of employee Lawless Gibson reached the other employees, who, thereupon, stopped work and walked off the job to protest the discharges.

The Trial Examiner accepted Thibeaux's version of the assault for purposes of his decision. On November 16, 1963, Thibeaux was working a shift which had begun at 11:00 P.M. the previous evening and ended at 7:00 A.M. that morning. After the walkout, he learned that the employees had gone to a barroom called the Beverly Hills Club in Gibson, Louisiana, run by Thomas Johnson's sister. Thibeaux also went to the Club and joined the others in conversation. Thibeaux testified that, "I was sitting down and they was drinking" (beer, it seems). Thibeaux stayed at the Club from about 10:30 or 11:00 o'clock A.M. until about 12:30 or 1:00 o'clock P.M., with the exception of about half an hour spent in demonstrating a new car to a fellow employee. When Thibeaux started to leave, McKay asked him if he was going to work that night. Thibeaux replied in the affirmative and McKay hit him. Thibeaux struck back. McKay was blind in one eye and was a smaller man than Thibeaux. Joseph Matthews, Johnson and Stephens joined McKay and threw Thibeaux to the floor, Matthews and Johnson punched him, Stephens "stomped" him, and McKay drew a knife but was prevented from using it by Buirden Jupiter, who helped Thibeaux to his car. Matthews and Johnson kept hitting at him while trying to pull him out of the car. A deputy sheriff arrived and stopped the fighting. Thibeaux said McKay had tried to kill him with a knife. The deputy asked for the knife and Mc-

1. The Board's decision and order are reported at 150 NLRB 16.

2. "(a) It shall be an unfair labor practice for an employer—
   "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title * * *." 29 U.S.C.A. § 158(a)(1).
   The section 157 right here involved is the right "to engage in * * * concerted activities for the purpose of * * * mutual aid or protection." 29 U.S.C.A. § 157.

3. McKinley Smith, John Matthews, Lawrence Givens, Roland Owens and Willie Bray.

4. Monroe McKay, Joseph Matthews, Thomas Johnson and Alvin Stephens.

5. Carpenters District Council of New Orleans and Vicinity, Local 2258, AFL-CIO.

6. The Trial Examiner was "not persuaded that the employees were discharged by the Respondent because of their union activities."

Kay took it out of his pocket. The deputy asked Thibeaux if he wanted to prefer charges but Thibeaux said that he did not when the deputy advised him this might result in counter-charges. Thibeaux drove to the plant and told Plant Manager Boyer what had happened.

The Board argues:

"McKay, Johnson, Stephens and Joseph Matthews might well have disqualified themselves from further employment with respondent had they deliberately assaulted Thibeaux to deter Thibeaux and other nonstriking employees from going to work for fear of physical harm. Cf. H. N. Thayer Co., 115 NLRB 1591, 1596; Kohler Co., 148 NLRB 1434, enforced [120 U.S. App.D.C. 259] 345 F.2d 748 (C.A. D.C.). As pointed out by the Trial Examiner, however, even Thibeaux's account of the fight does not show that Johnson, Stephens and Joseph Matthews knew why McKay had struck Thibeaux. Rather, it appears that 'they had come to the assistance of a companion who had been struck a blow from which he was bloodied' (R. 61). Such involvement in 'a barroom brawl' (R. 60) plainly does not warrant withholding the usual remedy of reinstatement and backpay from these three employees.

"Although McKay struck Thibeaux (a larger and younger man than McKay who is blind in one eye) because he resented Thibeaux's statement that he was going to work despite the work stoppage, his attack upon Thibeaux was plainly the 'impulsive reaction' of a man whose 'senses and emotions were probably affected by [his] drinking' rather than 'part of a deliberate plan of violence calculated to coerce employees to join the work stoppage' (R. 62). The Board, therefore, reasonably determined that McKay's attack on Thibeaux was not misconduct 'so violent or of such serious character as to render [him] unfit for further service.' N.L.R.B. v. Illinois Tool Works, 153 F.2d 811, 815 (C.A.7). Cf. Kan-

sas Milling Co. v. N.L.R.B., 185 F.2d 413, 420 (C.A.10)."

We do not agree. The *Thayer* and *Kohler* cases cited by the Board are not applicable here. Those cases involved unfair labor practice strikes and applications of the principles announced for the First Circuit by Chief Judge Magruder in N.L.R.B. v. Thayer Co., 1954, 213 F. 2d 748, 755, cert. den., 348 U.S. 883, 75 S.Ct. 123, 99 L.Ed. 694, as follows:

"* * * we would defer to the Board for two reasons: (1) This is a nice question of the appropriateness of the remedy confided primarily to Board determination. (2) It ordinarily may be assumed that the Board, as a part of the process of determining whether reinstatement would effectuate the policies of the Act, will balance the severity of the employer's unfair labor practice which provoked the industrial disturbance against whatever employee misconduct may have occurred in the course of the strike. Thus in reaching its decision the Board weighs two groups of facts. Such a decision has little value as a precedent in a subsequent Labor Board case because of the nuances of fact inevitable in the later situation."

N.L.R.B. v. Illinois Tool Works, cited in the part of the Board's brief quoted supra, involved

"* * * the function of the Board to weigh the conflicts which arise from time to time out of the exercise of those [self-organizational] rights and to determine in each case whether the interest of the employees or the interest of the employers should be held paramount * * *."

153 F.2d 816. Kansas Milling Co. v. N.L.R.B., also cited in the Board's brief, supra, involved a refusal to reinstate six employees following an economic strike. Their alleged unlawful acts are not described further than to sustain the Board's holding that "the conduct of these employees was not of such a char-

acter as to render them unsuitable for re-employment." (185 F.2d at 420.)

In the present case, the Trial Examiner refused to find that the walkout was induced by an unfair labor practice. Thus, there is no unfair labor practice against which to balance the misconduct of the four employees.

■ As to the Board's factual justifications for the misconduct of those employees, we think that the burden of proof rested on the General Counsel under the rule announced in Rubin Bros. Footwear, Inc., 99 NLRB 610, 611:

In the Mid-Continent Petroleum Corp. case [54 NLRB 912, 933–935], the Board enunciated the principle that an employer who refused to reinstate strikers, even upon an honestly mistaken belief that they had engaged in forbidden conduct, had no valid defense if, in fact, the employees were not guilty of the forbidden conduct. The reason for so holding was set forth by the Board in Standard Oil Company of California [91 NLRB 783, 791], as follows:

To hold otherwise would be to place employees who engage in lawful strike activities with the hope of returning to their jobs at the end of the economic struggle at the mercy of an employer who may sincerely regard their conduct as unlawful.

We here adhere to that principle. The Board stated the applicable rule of proof in *Mid-Continent* as follows:

Once it is pleaded * * * that the discharge was made for unlawful conduct inseparably connected with the strike, the burden was on [the employer] to show that all the striking employees discharged therefor

had, in fact, been guilty of unlawful conduct * * *.

We are now of the opinion that the honest belief of an employer that striking employees have engaged in misconduct provides an adequate defense to a charge of discrimination in refusing to reinstate such employees, unless it *affirmatively* appears that such misconduct did not in fact occur. We thus hold that once such an honest belief is established, the General Counsel must go forward with evidence to prove that the employees did not, in fact, engage in such misconduct. The employer then, of course, may rebut the General Counsel's case with evidence that the unlawful conduct actually did occur. At all times, the burden of proving discrimination is that of the General Counsel. This modification of the *Mid-Continent* rule does no more than recognize the true nature of the General Counsel's obligation to establish all the essential elements of a charge that discrimination has occurred when a striking employee is refused his job. It merely places an employee's honestly asserted belief in its true setting by crediting it with *prima facie* validity." [7]

■■ A careful reading and study of the record and joint appendix convince us that Plastic Applicators' discharge of these four employees was based on an honest belief that they had engaged in misconduct for which discharge was justified, and that it did not affirmatively appear that such misconduct did not in fact occur. Insofar as the Board's order relates to the five employees listed in footnote 3, supra, it is enforced, but enforcement is denied as to the four employees listed in footnote 4, supra.

Enforced in part and denied in part.

7. See also National Labor Relations Board v. Burnup & Sims, Inc., 1964, 379 U.S. 21, 23, n. 3, 85 S.Ct. 171, 13 L.Ed.2d 1; Burnup & Sims, Inc., 137 NLRB 766, 772, 773; United States Plywood Corp., 153 NLRB 241, 251.