[Civ. No. 48018. First Dist., Div. Three. Dec. 12, 1980.]

MERRILL FARMS, Petitioner, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Real Party in Interest.

COUNSEL

Arnold B. Myers, William H. Stoffers and Abramson, Church & Stave for Petitioner.

Ellen Lake, Manuel M. Medeiros, Daniel G. Stone and Suzanne Vaupel for Respondent.

Marco E. Lopez, Carlos M. Alcala, Francis E. Fernandez, Carmen S. Flores, Federico G. Chavez, Ellen J. Eggers, Dianna Lyons and Daniel A. Garcia for Real Party in Interest.

OPINION

SCOTT, J.—Merrill Farms petitioned for review of an Agricultural Labor Relations Board (ALRB) order finding that it had committed unfair labor practices by making threats which interfered with, restrained, and coerced Merrill Farms employees in the exercise of their rights under the Agricultural Labor Relations Act (ALRA). (Lab. Code, §§ 1140-1166.3.)[1]

Merrill Farms is an agricultural employer subject to the provisions of the ALRA. It is principally engaged in the growing of lettuce, asparagus, broccoli and other vegetables. The alleged unfair labor practices arose out of statements made by a foreman employed by Merrill Farms, prior to an election to determine if the real party, United Farm Workers of America (UFW) would be certified as the bargaining agent for Merrill Farms' employees.

An election to choose whether to be represented by the UFW was conducted among the employees of Merrill Farms on August 25, 1978.

---

[1]Labor Code section 1153 provides, in relevant part: "It shall be an unfair labor practice for an agricultural employer ... (a) To interfere with, restrain, or coerce agricultural employees in the exercise of the rights guaranteed in Section 1152."

Labor Code section 1152 provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of continued employment as authorized in subdivision (c) of Section 1153."

The UFW failed to receive sufficient votes to be certified as the bargaining representative of Merrill Farms' employees. Subsequently, on September 26, 1978, the ALRB issued a complaint based on four charges of unfair labor practices filed by the UFW. On February 19, 1979, after hearings, an administrative law officer (ALO) dismissed two of the charges and upheld two of the charges as violations of Labor Code section 1153, subdivision (a). Subsequently, on review, the ALRB dismissed one of the violations found by the ALO. The ALRB affirmed the remaining violation. It is this violation which gives rise to the instant petition for review.

The facts giving rise to the alleged violation are as follows: On June 15, 1978, Pablo Flores, a crew foreman for Merrill Farms, and several employees were eating their lunches inside a company bus. The employees were discussing the pros and cons of unions. Flores, until then not a party to the discussion, spoke from the driver's seat and said that if the union won, the camp would be closed down, as a similar camp was in 1970, and that the employers would use the land to raise cattle and grow grasses. Flores denies making these or any similar statements. Further, Flores testified that he never spoke with any employees regarding unions. Three Merrill Farms employees testified in support of the allegations. One had been a committee member who handed out pro-union leaflets. He overheard the Flores statement. As to its effect on the other employees, he testified that later in the day other employees were talking about what Flores had said. Furthermore, his fellow workers would listen to him before the Flores statement, but thereafter they would not listen. He also testified that prior to the incident no one had refused leaflets, but after the incident they wouldn't take the prounion leaflets.

Another employee testified to having heard the Flores statement. He also had participated in union organization. He testified that before the Flores statement most of the workers talked about joining the union, but after the statement they didn't. He testified also that prior to the statement fellow employees would accept union buttons, but thereafter they refused the buttons. He admitted, however, that he saw workers of the crew wearing buttons after the Flores statement, and that he heard no other statements made by Flores concerning the organization activities.

A third witness, who had previously been fired by Flores and rehired by direction of another supervisor, testified that he heard the Flores

statement. He testified that after the statement workers didn't wear their buttons and when asked why, they refused to answer. This particular witness stated that he was not afraid to wear his buttons, nor was he concerned that the camp would be closed.

Other employees testified on behalf of Merrill Farms to the effect that they were present at the time the alleged statements were made and did not hear them.

After the ALO's decision, Merrill Farms filed exceptions thereto with the ALRB. Pursuant to Labor Code section 1146, the ALRB delegated its authority to a three-member panel. That panel, in the name of the board, considered the record and the decision of the ALO. Based thereon, the board affirmed the rulings, findings and conclusions of the ALO with respect to the one violation involving Pablo Flores. As to the statements of Supervisor Flores, the board found as follows: "The ALO concluded that Respondent violated Section 1153(a) of the Act by the conduct of its supervisor, Pablo Flores, on June 15, 1978. During a discussion among the employees in his crew on the merits of the unionization while the crew was eating lunch in a company bus, Flores said that if the union, that is, the UFW, were to come in, Respondent would close the labor camp where the crew lived and change to planting alfalfa and grasses and raising cattle, operations which are less labor intensive. Flores referred to the closing of a Posadas camp in 1970 as an example of what Respondent would do.

"The ALO found that Flores made these statements, and concluded that they were threats which interfered with, restrained and coerced the employees in their exercise of the rights guaranteed to them in Section 1152 of the Act. We agree and hereby affirm the ALO's conclusion that such statements violated Section 1153(a) of the Act."

The nature of our review is delineated in section 1160.8 of the Labor Code, which provides that "The findings of the board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive." (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 346 [156 Cal.Rptr. 1, 595 P.2d 579].)

In *Universal Camera Corp.* v. *Labor Bd.* (1951) 340 U.S. 474 [95 L.Ed. 456, 71 S.Ct. 456] (cited with approval in *Tex-Cal,*

*supra*, at p. 346),[2] the United States Supreme Court extensively reviewed the National Labor Relations Act, wherein the same language is found. The court rejected the concept that courts could determine the substantiality of the evidence to support a board's decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn (at p. 487 [95 L.Ed. at p. 467]). The court stated, "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight" (at p. 488 [95 L.Ed. at p. 467]). The court went on to say, "The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of testimony of witnesses or its informed judgment on matters within its special competence or both" (at p. 490 [95 L.Ed. at pp. 468-469]).

■ Petitioner argues that there is no substantial evidence to support the board's finding that their supervisor, Flores, made the statements attributed to him. The evidence was contradictory, with several employees testifying that the statements were made, and Flores denying that he made the statements. Our inquiry need go no further. The issue is one of witness credibility. In such matters as credibility of witnesses the finder of fact will be reversed only in exceptional circumstances. (See *N. L. R. B.* v. *Massachusetts Mach. & Stamping, Inc.* (1st Cir. 1978) 578 F.2d 15, 20.) We find no exceptional circumstances here. There is simply a conflict in the testimony which has been resolved against Merrill Farms. There is substantial evidence to support the ALRB's finding that Flores made the statements.

■ Petitioner next contends that Merrill Farms should not be responsible for Mr. Flores' statements. However, Flores is a supervisor within the meaning of Labor Code section 1140.4, subdivision (j), which defines a supervisor as "any individual having the authority . . . to discharge." Merrill Farms, in their answer to the complaint before the administrative law officer, admitted that Flores was a supervisor within the meaning of the act. There was undisputed evidence that he discharged one of the crew members who ultimately testified at the

2The ALRB is derived from the National Labor Relations Act (NLRA). Labor Code section 1148 requires that "The board [ALRB] shall follow applicable precedents of the National Labor Relations Act, as amended." We look to federal court precedents in the interpretation of the act. (See *Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551 [147 Cal.Rptr. 165, 580 P.2d 665].)

hearing. Since he is a supervisor within the meaning of the act by definition, Merrill Farms is responsible for his statements, whether authorized by them or not, and his statements can form the basis of an unfair labor act. The only manner in which the employer can relieve himself of responsibility for the supervisor's statements is to repudiate the statements. (*N. L. R. B.* v. *Big Three Ind. Gas & Equipment Co.* (5th Cir. 1978) 579 F.2d 304, 310.) No such disclaimer was made in the instant case. The fact that senior members of the employer's company were unaware of the statements, as contended by them, does not absolve them of responsibility for them. It is, however, a fact to be considered by the board in determining whether an unfair labor practice did in fact occur, as we shall hereinafter discuss.

We next consider whether, in light of the whole record, the statements found by the board to have been made by Flores could reasonably have been found to be threats which interfered with, restrained, or coerced the employees in the exercise of their rights under the ALRA. ▆ Labor Code section 1155 provides, "The expressing of any views, arguments, or opinions, or the dissemination thereof . . . shall not constitute evidence of an unfair labor practice under the provisions of this part, if such expression contains no threat of reprisal or force, or promise of benefit." This section acknowledges the right of employers to express antiunion views, and at the same time acknowledges that threats of reprisal can constitute the basis of an unfair labor practice. Real party contends here that Flores' statement is a "clear threat of reprisal." ▆ An employer's threats to close its plant or to make other economic reprisals for union activity constitute restraint and coercion of employees in the exercise of their rights guaranteed by section 1152 of the ALRA. (See *N. L. R. B.* v. *Gissel Packing Co.* (1969) 395 U.S. 575 [23 L.Ed.2d 547, 89 S.Ct. 1918], involving an identical provision of the NLRA.)

In *Dierks Forests, Inc.* v. *N.L.R.B.* (8th Cir. 1967) 385 F.2d 48, 50, the court acknowledged that "We have held on prior occasions that it is an unfair labor practice for a Company to threaten its employees with moving or shutting down the plant, and consequent loss of employment as the result of their support for the Union. [Citations.]" Here, Flores stated that if the union won the need for labor would be curtailed, which included the loss of free housing. We do not know what motivated Flores to make such an unauthorized statement, for he in fact denies making the statement. However, neither the employer's motive nor the

success of the coercion is an element of a section 1153, subdivision (a) violation. The test is whether the employer engages in conduct which it may reasonably be said tends to interfere with the freedom of the exercise of the employee's rights under the act. (See *Labor Bd.* v. *Burnup & Sims* (1964) 379 U.S. 21 [13 L.Ed.2d 1, 85 S.Ct. 171]; *Pandol & Sons* v. *Agricultural Labor Relations Bd.* (1979) 98 Cal.App.3d 580, 586 [159 Cal.Rptr. 584].) Our inquiry on review is into whether, in light of the entire record, the board could properly conclude that Flores' statements might reasonably have had that effect.

The *Dierks* court went on to say, however, that where "the offensive statement is isolated and not part of any systematic pattern of intimidation, there must be other circumstances fairly representative of the Company's antiunion attitude in order to support a finding of economic reprisal in violation of Section 8(a) (1) [the federal counterpart to Lab. Code, § 1153, subd. (a)]. [Citations.]" (385 F.2d at p. 50.) The *Dierks* court further stated, "We have similarly refused to grant enforcement of the Board's order in Section 8(a) (1) situations involving interference, threats and coercion where the Board's case rested on a single or isolated statement. [Citations.]" (*Id.* at p. 51.) Furthermore, "we are to view the statements in their entirety and consider their total effect on the receiver." (*N.L.R.B.* v. *Four Winds Industries, Inc.* (9th Cir. 1976) 530 F.2d 75, 78.) It is in this context that we must examine Flores' statements to determine whether they were "threats that interfered with, restrained, or coerced employees in the exercise of the rights guaranteed them in Section 1152 of the act."

■ We conclude that the isolated statement of Supervisor Flores cannot support a finding of unfair labor practice. Such a finding is not a reasonable evaluation of the statements made and their possible effect on the employees, taking into consideration all the surrounding facts and circumstances. Flores' statement was made shortly after commencement of unionization proceedings. It occurred some two and a half months prior to the election. Flores made no other such comments. He was present during prounion activities, including button wearing and leaflet distribution. There is no evidence that the employer in any other way attempted to disrupt the union campaign. There was testimony from three employees that they heard the statement made in the presence of approximately twenty other employees. There was testimony from other employees present that they did not hear the statements. The burden is upon the general counsel for the board to prove by a pre-

ponderance of the evidence the charges of unfair labor practices. We conclude that the burden has not been met here, where he has presented no evidence that Flores' statement was anything more than an isolated, offhand comment, heard by at most one crew of employees, suggesting an opinion about what might happen in the event of unionization.

The court in *Abatti Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1980) 107 Cal.App.3d 317, 327-328 [165 Cal.Rptr. 887], concluded that the "question whether employer statements are coercive in context is normally one peculiarly within the discretion of the agency, Board, because of its particular sensitivity to the effects of speech in the labor election context. Further, systematic, repeated or unambiguous threats of job loss and plant closing on account of a union victory are nearly always coercive, even though isolated expressions of antiunion sentiment by lower level management employees are often permissible expressions of ideas." In so concluding, the *Abatti* court was setting forth the principle that they distilled from the United States Supreme Court decision in *NLRB* v. *Gissel Packing Co., supra*, 395 U.S. 575 [23 L.Ed.2d 547, 89 S.Ct. 1918]. The *Abatti* court may have somewhat overstated the deference we should give to decisions of the ALRB. The ALRB's decision must be grounded on a reasonable interpretation of the facts. The *Abatti* court recognized that "systematic, repeated, or unambiguous threats" are coercive. Here, we have an isolated statement made by a low level supervisor, which statement was apparently not made by prearrangement but was an off-the-cuff statement made during an employee discussion of the pros and cons of unionization. There is no evidence that any of the high level executives of Merrill Farms were aware of the statement. If they were not, although responsible for it, they were in no position to disclaim the statement. It further appears that Merrill Farms was engaged in no other activity remotely suggesting they were attempting to inhibit the right of their employees to unionize. In this context, we conclude that there is no substantial evidence to support a finding that the statement could reasonably have constituted a threat which interfered with, restrained, or coerced the employees against their rights to organize and to bargain collectively as permitted pursuant to Labor Code section 1152.

The order of the ALRB is annulled.

Barry-Deal, J., concurred.

**WHITE, P. J.**—I respectfully dissent.

I find that I am unable to agree with the result reached by my colleagues; my view is that the Agricultural Labor Relations Board's (hereafter Board) order is entitled to enforcement. There is no argument but that Labor Code section 1160.8 is a legislative command that all are bound to obey in our review of the Board's set aside petitions. The findings of the Board are conclusive if supported by substantial evidence. (See maj. opn., *ante*, p. 181.) Our Supreme Court decided in *Tex-Cal Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 346 [156 Cal.Rptr. 1, 595 P.2d 579], that the legislative mandate embodied in section 1160.8 passes constitutional (California) muster. Manifestly if the standard for judicial review of Board decisions is "substantial evidence," review utilizing the standard "independent judgment" as to the weight of the evidence is prohibited.

The majority's erudite opinion illustrates that the distinction between the respective standards of review when practically applied become illusory if not nonexistent. Particularly is this apparently the case when, as herein, in applying the "substantial evidence" standard seemingly undue emphasis is placed on the admonition "[t]he ALRB's decision must be grounded on a reasonable interpretation of the facts." (See maj. opn., *ante*, p. 185.)

Of course, not to be overlooked is the fact that reasonable justices often differ as to what constitutes substantial evidence. In this case, my colleagues evaluate the record in salient part as follows: "Here, we have an isolated statement made by a low level supervisor, which statement was apparently not made by prearrangement but was an off-the-cuff statement made during an employee discussion of the pros and cons of unionization." (See maj. opn., *ante*, p. 185.)

If the view projected by the majority is the only *reasonable interpretation* of the record evidence, I would readily agree that bare minimum standards protecting the employer's constitutional right to freely communicate in labor union elections and disputes would dictate the result they reach as sound and reasonable in equity and law.

But in my review of the record, I find the requisite evidentiary support for the Board's finding and order. I find the Board's evaluation of

Supervisor Flores' statements and their effect in the context of the labor dispute at Merrill Farms to be reasonable.

The administrative law officer (ALO) found Flores' statements in fact threatened the employees "with the loss of their places to live" and "the losing of their jobs" "if they voted for the union." Further, the ALO found that Flores' threatening statements put the workers in "fear" of retaliation if they continued to be amenable to the union and thereby adversely affected the union efforts. The Board, of course, adopted the ALO's findings.

In my view, the Board's findings of fact are supported by substantial evidence. Witness Macias testified that when the workers returned to their living quarters that night everyone discussed what Flores had earlier stated during lunch time. He testified to the effect that after the statement, worker support for the union waned. Also, it was Macias' opinion that the workers were "scared" as to what would happen to them if their camp closed. His cross-examination revealed that while before the *incident* no one refused the union leaflets, afterwards they would not talk to him and would not take leaflets from him. Witness Rasa's testimony essentially corroborated that of Macias. He testified that the workers were surprised and "taken aback," after which the workers would no longer accept the offer of union buttons.

The ALO and subsequently the Board found that Flores intended his statements as threats in order to restrain, coerce and intimidate the employees in the exercise of their collective bargaining rights. (Lab. Code, § 1153, subd. (a).) State of mind or intent is most often a matter of proof by circumstantial evidence. Rasa testified that he reacted to Flores' statement that the union meant closing the camp by saying the company would be bankrupt "because what would they do with their fields?" It was then, according to Rasa, that Flores made his *raising cows* and *planting feed grasses* statement. I have no difficulty in finding legally sufficient evidentiary support for the Board's findings as regards *intent*. It certainly negates and precludes a finding of being "off-the-cuff," in my view.

Rasa's version has added significance. *NLRB* v. *Gissel Packing Co.* (1969) 395 U.S. 575 [23 L.Ed.2d 547, 89 S.Ct. 1918], discusses in detail the delicate balance between the employer's protected free speech right to communicate with his employees and the employees' equal

right to associate freely. In light of the fact that the record herein is devoid of any evidence even suggesting that Flores' statement was a prediction of "'demonstrable "economic consequences"'" (see *Gissel, supra,* at p. 619 [23 L.Ed.2d at p. 581]), I find the Board's finding of threats intended to "restrain," "coerce," and "intimidate" valid, i.e., supported by substantial evidence.

The fact that Flores' statement was "isolated" would not seem to make it any less an unfair labor practice, if in fact, it contains a *"threat of reprisal or force, or promise of benefit."* (Lab. Code, § 1155, italics added.)

"Threats of reprisal," having the effect of instilling "fear," were factual questions herein answered by the Board, supported by substantial evidence and the Board's expert appraisal of the entire labor relations setting presented. In *Abatti Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1980) 107 Cal.App.3d 317, 327 [165 Cal.Rptr. 887], Presiding Justice Brown ( Gerald) points out that "charges of coercive threats...of employees present especially difficult considerations of competing interests." I concur in his view that "[w]e may not substitute our judgment for that of the Board in its area of special expertise, the assessment of the weight of circumstantial evidence in context." (At p. 333.) *Abatti Farms, Inc.* is similar to the instant case in that therein a sister (office employee) of the employer's made statements to the employees linking a possible union victory to loss of jobs without supporting facts showing economic necessity. In my view because we make full use of the Board's expertise and sensitivity to the effects of speech in the labor union election context as contemplated by the Act (*Tex-Cal Land Management Inc.* v. *Agricultural Labor Relations Bd., supra,* 24 Cal.3d 335, 345; *Abatti Farms, Inc, supra,* at p. 327, quoting *NLRB* v. *Gissell Packing Co., supra,* 395 U.S. 575, 617-618 [23 L.Ed.2d 547, 580]), we are not thereby abdicating our responsibility to review the Board's decision for reasonableness and fairness. (See *Universal Camera Corp.* v. *Labor Bd.,* 340 U.S. 474, 490 [95 L.Ed. 456, 468-469, 71 S.Ct. 456].) In this case, neither the time nor isolation of the statement renders the Board's decision unreasonable. The fact that the "high level executives of Merrill Farms were [not] aware of the statement" (maj. opn., *ante,* p. 185) would not seem to render the Board's decision unfair unless it can be said the basic doctrine of respondeat superior is basically unfair or unreasonable. I assume these

considerations were properly considered by the Board in fashioning the remedial order.

I would find that the Board's order is entitled to enforcement.

A petition for a rehearing was denied January 9, 1981. White, P. J., was of the opinion that the petition should be granted. The petition of real party in interest for a hearing by the Supreme Court was denied March 13, 1981. Bird, C. J., did not participate therein. Taylor, J.,* participated therein. Newman, J., was of the opinion that the petition should be granted.

---

*Assigned by the Acting Chairperson of the Judicial Council.