Robert J. CLAYTON, Dennis Oates, Randy B. Murphy, Kenneth Lee, Jr., Lowell Perkola, and Roger Wilmont, Plaintiffs,

v.

GOLD BOND BUILDING PRODUCTS, Defendant.

Civ. No. 86–2916.

United States District Court, E.D. Michigan, S.D.

Feb. 20, 1987.

Eloise Williams, Pontiac, Mich., for plaintiffs.

William Balke, and Seth Lloyd, Dykema Gossett Spencer Goodnow & Trigg, Detroit, Mich., Steven Greene, and Edward Katze, Constangy Brooks & Smith, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This action was brought by six former employees of Defendant Gold Bond Building Products (Gold Bond). On July 7, 1986, Plaintiffs filed a three count complaint, seeking to recover damages allegedly resulting from their discharge by Gold Bond. Jurisdiction is based on diversity of citizenship of the parties.[1] 28 U.S.C. § 1332. In Count I, Plaintiffs allege a claim for

---

1. In their complaint, Plaintiffs state that jurisdiction is "also" based on diversity of citizenship, thus suggesting an alternate basis for the Court's subject matter jurisdiction. Complaint ¶ 8. Apparently, Plaintiffs believe that this Court also enjoys jurisdiction based on Title VII of the Civil Rights Act of 1964. In paragraph 7, Plaintiffs allege:

7. That Defendant GOLD BOND is a corporation and is a "person" within the meaning of Section 701(a) of Title VII, 42 U.S.C. § 2000e(a).

Plaintiffs, however, do not allege a claim for discrimination under Title VII in any count of their complaint. Accordingly, the Court concludes that subject matter jurisdiction is based *solely* on diversity of citizenship.

wrongful discharge. Count II alleges a claim for "impairment of economic opportunities." Finally, in Count III, Plaintiffs seek to impose liability for "outrageous and intolerable conduct" by Gold Bond.

This matter is presently before the Court on Gold Bond's motion to dismiss. Two arguments are advanced by Gold Bond in support of this motion. As to all counts, Gold Bond contends that Plaintiffs' claims are preempted by the National Labor Relations Act (NLRA), and accordingly, this Court lacks subject matter jurisdiction. With respect to Counts II and III, Gold Bond contends that Plaintiffs have failed to state claims upon which relief can be granted. The motion is brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

■ Before addressing the merits of Gold Bond's motion, the Court must resolve a procedural issue raised by the parties briefs. Because Gold Bond's motion includes matters outside the pleadings, Plaintiffs suggest that the Court must treat this motion as one for summary judgment. As already stated, Gold Bond's motion has two aspects, that is, the motion is based in part on Rule 12(b)(1) and in part on Rule 12(b)(6). If the additional matters were submitted in connection with the Rule 12(b)(6) aspect of Gold Bond's motion, Plaintiffs' position would be well taken. Rule 12(b) provides in relevant part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....

In its brief, however, Gold Bond states that the additional matters are offered only in connection with the Rule 12(b)(1) aspect of its motion. Defendant's Brief at 2 n. 1. Supplementation of the pleadings in connection with a Rule 12(b)(1) motion does not convert the motion into one for summary judgment. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 916 (6th Cir.1986).

Thus, Plaintiffs' argument is without merit. So long as the supplemental matters are excluded from the Court's consideration of the Rule 12(b)(6) aspect of Gold Bond's motion, the motion need not be treated as one for summary judgment.

Having resolved this issue, the Court will proceed to address the merits of Gold Bond's motion to dismiss as it applies to each of Plaintiffs' claims. As already stated, there are two aspects to Gold Bond's motion. Inasmuch as the preemption argument raises a jurisdictional issue, *see International Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986), the Court will address that argument first.

Certain background facts are necessary to a full understanding of Gold Bond's preemption claim. Gold Bond operates a gypsum wallboard plant in Northern Michigan. Plaintiffs were employees of Gold Bond and members of the Oil, Chemical and Atomic Workers International Union, Local No. 7–239 (Union), which represented Gold Bond's employees in collective bargaining. On or about May 7, 1985, Gold Bond and the Union began negotiating a labor contract for 1985. Negotiations did not result in an agreement prior to the expiration of the existing contract on May 31, 1985. The union commenced a strike on June 1, 1985, which continued until a new agreement was reached on or about August 5, 1985.

Plaintiffs participated in the strike from its inception. Their participation included, among other things, walking on the picket line which was located outside of the plant. Additionally, on July 4, Plaintiffs participated in a local "4th of July" parade, by entering a float which displayed a skinned fox. The display apparently referred to Gold Bond's plant manager, Ken Fox. Shortly thereafter, Plaintiffs received letters from Gold Bond, notifying that they had been discharged by the company for strike misconduct. The letters were dated July 4, 1985.

The Union attempted to secure reinstatement for the discharged employees. As part of its effort, the Union filed unfair labor practice charges with the National

Labor Relations Board (Board). The basis of the Union's complaint with respect to Plaintiffs was that Plaintiffs had been discharged in retaliation for engaging in protected concerted activity. The Board ultimately decided the unfair labor practice charges in favor of Gold Bond.[2] Plaintiffs filed the present complaint a few days after receiving the Board's decision.

In evaluating Gold Bond's preemption claim, the Court is guided by the principles developed in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and its progeny. Those principles were recently summarized by the Supreme Court as follows:

> Our approach to the pre-emption issue has ... been stated and restated. First, we determine whether the conduct that the State seeks to regulate or to make the basis of liability is actually or arguably protected or prohibited by the NLRA. *Garmon, supra*, at 245 [79 S.Ct. at 780].... Although the *"Garmon* guidelines [are not to be applied] in a literal, mechanistic fashion," ... if the conduct at issue is arguably prohibited or protected otherwise applicable state law and procedures are ordinarily pre-empted.... When, however, the conduct at issue is only a peripheral concern of the Act or touches on interests so deeply rooted in local feelings and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act, we refuse to invalidate state regulation or sanction of the conduct. *Garmon, supra*, at 243–44 [79 S.Ct. at 778–79]. The question of whether regulation should be allowed because of the deeply rooted nature of the local interest involves a sensitive balancing of any harm to the regulatory scheme established by Congress, either in terms of negating the Board's exclusive jurisdiction or in terms of conflicting substantive rules, and the importance of the asserted cause of action to the State as a protection to its citizens.
> *Local 926, International Union of Operating Engineers v. Jones*, 460 U.S. 669, 676, 103 S.Ct. 1453, 1458–59, 75 L.Ed.2d 368 (1983) (citations and footnote omitted).

Thus, the Court's focus is on the *conduct* which allegedly gives rise to Plaintiffs' claims, as opposed to the descriptive title given to a particular cause of action. If the conduct is actually or arguably protected or prohibited under the NLRA, the claims are preempted unless the Court is persuaded that an exception is applicable in light of the facts of this case. Moreover, a finding of preemption precludes not only a state court but also a federal court, such as this, from adjudicating Plaintiffs' claims. *Garmon*, 359 U.S. at 244–45, 79 S.Ct. at 779–80.

Gold Bond argues that the conduct giving rise to each of Plaintiffs' claims is arguably prohibited under the NLRA, and therefore, the claims are preempted. The Court agrees that absent an applicable exception, Plaintiffs' claims are preempted by the NLRA.

■ The essence of Plaintiffs' complaint is that they were discharged in retaliation for their strike activities. More specifically, paragraph 46 of the complaint states:

> 46. It is Plaintiffs' further belief that Defendant Company's treatment against [sic] said Plaintiffs, including their discharge[,] was based on Plaintiffs' activity in the Union, [and] on the picket line, and Defendant's negative attitude toward Union's position to the strike.

Additionally, Plaintiffs allege that they were singled out for discharge, presumably because of their participation in the "4th of July" parade (Complaint ¶¶ 43–45).

The conduct of which Plaintiffs complain is arguably prohibited under section 8(a) of

---

**2.** After reviewing videotapes of Plaintiffs' activity on the picket line, the Board dismissed the unfair labor practice charges with respect to Plaintiffs Perkola, Lee, Murphy, and Wilmont. The Regional Director found that Gold Bond's discharge of these employees was not in violation of the NLRA. A complaint was filed with respect to Plaintiffs Oates and Clayton. However, after a full hearing before an administrative law judge, the remaining unfair labor practice charges were similarly dismissed. The Union did not file objections to the administrative law judge's decision.

the NLRA. That section provides in relevant part:

> (a) It shall be an unfair labor practice for an employer—
>
> > (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
>
> > \* \* \* \* \* \*
>
> > (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization[.]

29 U.S.C. §§ 158(a)(1), (3). Section 7 of the NLRA protects employees' rights to engage in concerted activity for the purpose of collective bargaining. *Id.* § 157. Thus, to the extent that Plaintiffs allege that they were discharged for their strike activities, Gold Bond's conduct arguably violated section 8(a)(1). *See, e.g., NLRB v. Burnup & Sims, Inc.,* 379 U.S. 21, 85 S.Ct. 171, 13 L.Ed.2d 1 (1964); *NLRB v. Fansteel Metallurgical Corp.,* 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627 (1939). To the extent that Plaintiffs allege that they were discharged because of their association with the Union and Gold Bond's anti-union animus, Gold Bond's conduct arguably violated section 8(a)(3). *See, e.g., Coors Container Co. v. NLRB,* 628 F.2d 1283, 1288 (10th Cir.1980); *NLRB v. Adam Loos Boiler Works Co.,* 435 F.2d 707 (6th Cir.1970). The Court's conclusion that Gold Bond's conduct is arguably prohibited under section 8(a) is buttressed by the fact that the Board entertained unfair labor practice charges arising out of the same conduct. Thus, Plaintiffs' claims appear to be preempted by the NLRA.

Nevertheless, Plaintiffs argue that the claims fall within one of the two exceptions to preemption identified in *Garmon.* Apparently, Plaintiffs contend that the claims should be allowed because of the deeply rooted nature of the local interest in these types of claims.[3] In this regard, Plaintiffs

refer the Court to the Supreme Court's decision in *Farmer v. United Brotherhood of Carpenters & Joiners of America,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). In *Farmer,* the Court held that a claim for intentional infliction of emotional distress, brought under California law, was not preempted by the NLRA. *Id.* at 305, 97 S.Ct. at 1066. Plaintiffs argue that *Farmer* directly controls the preemption issue with respect to Count III, which alleges a claim for "outrageous and intolerable conduct." Although not expressly stated in the complaint, Plaintiffs now take the position that Count III is intended to state a claim for intentional infliction of emotional distress, of which outrageous and intolerable conduct is an element. *See Harris v. Citizens Insurance Co.,* 141 Mich.App. 110, 366 N.W.2d 11 (1983). Accordingly, Plaintiffs contend that the Court is precluded from finding that the claim is preempted. Plaintiffs further argue that the Court should apply *Farmer* with respect to their wrongful discharge claim because claims for intentional infliction of emotional distress and wrongful discharge often overlap. Plaintiffs do not address specifically their position as to Count II.

The Court is not persuaded that *Farmer* is controlling in the present case. In *Farmer,* the Supreme Court held that a claim for intentional infliction of emotional distress brought under California law against the union for discrimination against a member was not *per se* preempted by the NLRA. 430 U.S. at 304, 97 S.Ct. at 1065. The Court, however, made clear the limited scope of its decision by further holding that in order to avoid preemption

> it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.

3. Plaintiffs clearly cannot argue that the conduct at issue is only a peripheral concern to the NLRA, thus coming within the other exception to preemption. As discussed on the previous page, Gold Bond's alleged conduct and the propriety of that conduct are covered by the express terms of section 8(a).

*Id.* at 305, 97 S.Ct. at 1066. Because the issue of liability could be resolved under California law without consideration of whether unlawful discrimination occurred, the Court declined to hold that the tort was preempted as a matter of law. *Id.* at 304, 97 S.Ct. at 1065. Nevertheless, the Court concluded that the claim was preempted based on the facts of the case because the evidence actually presented at trial focussed primarily on discriminatory hiring hall practices as opposed to the alleged "outrageous conduct." *Id.* at 306, 97 S.Ct. at 1066.

Unlike California, the issue of liability under Michigan law cannot be resolved without consideration of the lawfulness of the discharges. The general rule in Michigan is that where an individual does no more than insist upon his legal rights, he cannot be held liable for intentional infliction of emotional distress even though the act caused emotional injury to another. *Warren v. June's Mobile Home Village & Sales,* 66 Mich.App. 386, 392, 239 N.W.2d 380 (1976). Thus, resolution of Plaintiffs' claims will necessarily involve an inquiry into whether Gold Bond had a legal right to discharge these employees. In other words, the tort action is clearly related to the alleged employment discrimination. *Farmer,* 430 U.S. at 305, 97 S.Ct. at 1066. In addition, the complaint does not allege that the discrimination was accomplished in a particularly abusive manner. Clearly, therefore, the prerequisites for applying *Farmer* are not met in this case. Accordingly, the Court rejects Plaintiffs' argument that Counts I and III should be allowed on the authority of that case.

Because the conduct which gives rise to Plaintiffs' claims is arguably prohibited under section 8(a) of the NLRA, and further because no exception to the general rule of preemption is applicable to the claims in this case, the Court concludes that the claims must be dismissed on the ground that they are preempted by the NLRA.

4. Gold Bond also argues that Plaintiffs have failed to state a claim for intentional infliction of emotional distress because they have failed to allege sufficiently outrageous acts to sustain

Finally, the Court notes that Gold Bond also sought to dismiss Counts II and III on the ground that they failed to state claims upon which relief can be granted. Although the issue is moot in light of the Court's holding on the preemption issue, the Court agrees with Gold Bond as to Count II.[4] In Count II, Plaintiffs allege a claim for "impairment of economic opportunities." Although the nature of the claim is unclear, it is apparently premised on some form of negligence since Plaintiffs refer to Gold Bond's breach of duty. Although Gold Bond challenged Plaintiffs to come forth with authority to support this purported cause of action, no authority has been cited by Plaintiffs. Since the Court is not persuaded that such a claim is recognized under Michigan law, the Court also dismisses Count II on the ground that it fails to state a claim upon which relief can be granted.

For the reasons set forth above, the Court will GRANT Defendant Gold Bond's Motion to Dismiss. Defendant shall submit an appropriate order, after having it approved by Plaintiffs as to form.

their claim. *See Fulghum v. United Parcel Services,* 424 Mich. 89, 378 N.W.2d 472 (1985). The Court is not persuaded that the allegations are insufficient as a matter of law.