# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3855

_____

| | | |
|---|---|---|
| National Labor Relations Board, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Application for Enforcement |
| | * | of an Order of the |
| La-Z-Boy Midwest, a Division of | * | National Labor Relations Board |
| La-Z-Boy Incorporated, | * | |
| | * | |
| Respondent. | * | |
| | * | |

_____

Submitted: September 17, 2004
Filed:  December 7, 2004

_____

Before COLLOTON, HEANEY, and HANSEN, Circuit Judges.

_____

COLLOTON, Circuit Judge.

The National Labor Relations Board ("Board") applies for enforcement of an order finding that La-Z-Boy Midwest ("La-Z-Boy"), a division of La-Z-Boy Incorporated, committed unfair labor practices against employees John Phillips and Klint Guinn during a union organizing drive.  The Board, after modifying a recommended order of an administrative law judge ("ALJ"), found that the company had unlawfully disciplined both employees.  We grant the application to enforce the order with respect to Phillips, but deny the application as to Guinn.

Section 8(a)(1) of the National Labor Relations Act ("NLRA" or "Act") makes it an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" by the Act. 29 U.S.C. § 158(a)(1). Section 8(a)(3) forbids an employer to use "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). The General Counsel brought an unfair labor practice charge alleging that La-Z-Boy violated both of these sections by disciplining Phillips and Guinn. The Board ultimately found a violation of Section 8(a)(1) with respect to Phillips, and a violation of both sections as to Guinn.

I.

The alleged unfair labor practices involve two separate incidents. The first occurred on June 16, 2000, when John Phillips, a parts inspector for La-Z-Boy, was called to a meeting with two of his supervisors, Dave Harris and Wayne Allen. The supervisors told Phillips that La-Z-Boy had received a complaint from another employee alleging that Phillips had threatened to reject products from the employee, thereby negatively affecting that employee's pay, if the employee failed to sign a union authorization card. Phillips denied making the threat. Harris testified that he and Allen reminded Phillips of the company policy against union solicitation during work hours, and then excused him without further comment. Phillips testified, however, that Harris went beyond a simple "reminder" and told Phillips to "consider this your verbal warning." In addition, the supervisors created a written record of the conversation and e-mailed it to the director of human resources for placement in Phillips's employee file.

An ALJ conducted a hearing and analyzed the case according to the Board's decision in *Wright Line,* 251 N.L.R.B. 1083 (1980), *enforced*, 662 F.2d 899 (1st Cir. 1981). Under this approach, the General Counsel must make a prima facie showing

that protected conduct was a "motivating factor" in the employer's decision to discipline the employee. The burden then shifts to the employer to demonstrate that the same action would have been taken notwithstanding the protected conduct. *See Carleton College v. NLRB*, 230 F.3d 1075, 1078 (8th Cir. 2000); *NLRB v. Fixtures Mfg. Corp.*, 669 F.2d 547, 550-51 (8th Cir. 1982).

The ALJ credited Phillips's testimony that supervisor Harris told him to consider their meeting a verbal warning, and also found that e-mails documenting the meeting were placed in Phillips's file at the direction of La-Z-Boy's human resources manager. The ALJ concluded that these actions constituted the first step in the company's progressive discipline process, and that the company took the adverse action against Phillips with the intent to discourage union activity. Because the ALJ found that Phillips never threatened a fellow employee, he concluded that the company had no business justification for the discipline, and that the company failed to show that it would have taken the same action without regard to Phillips's involvement with the union.

On review of La-Z-Boy's exceptions to the recommended order, the Board adopted the ALJ's findings of fact, and upheld the ALJ's conclusion that the company unlawfully disciplined Phillips, but reasoned that the ALJ employed the wrong legal standard by following *Wright Line*. The Board held that because there was no dispute as to the reason Phillips was disciplined (i.e., the alleged threat against a fellow employee), the proper analytical framework was that found in *NLRB v. Burnup & Sims*, 379 U.S. 21 (1964). In *Burnup & Sims*, the Supreme Court held that the NLRA is violated when an employer administers discipline based on a good faith but mistaken belief that the employee engaged in misconduct in the course of protected activity. *Id.* at 23-24. Here, the Board found that La-Z-Boy issued a verbal warning to Phillips based on a good faith belief that Phillips had threatened another employee in the course of his union solicitation activities. But because the Board agreed with

-3-

the ALJ that the evidence did not establish misconduct by Phillips, it found that the verbal warning constituted a violation of Section 8(a)(1) under *Burnup & Sims*.

La-Z-Boy now argues that the Board committed an error of law by applying *Burnup & Sims* to this situation. The company contends that it never imposed discipline on Phillips for threatening a co-worker, and that it never relied on a good faith but mistaken belief that Phillips had done so. Indeed, La-Z-Boy says it has never asserted that it could prove that Phillips threatened a fellow employee.

We enforce an order of the Board if the Board "has correctly applied the law and its factual findings are supported by substantial evidence on the record as a whole." *Pace Indus., Inc. v. NLRB*, 118 F.3d 585, 590 (8th Cir. 1997) (internal quotation and citations omitted); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-88 (1951). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Although La-Z-Boy casts its argument as a challenge to the Board's use of the legal standard from *Burnup & Sims*, its contention is premised on the view that Phillips was not disciplined. At bottom, therefore, the company disputes the Board's finding of fact that the company issued a verbal warning to Phillips – a matter that we review under the "substantial evidence" standard. In reaching its conclusion, the Board adopted the ALJ's finding that Phillips was credible when he testified that manager Harris told him to consider the meeting a "verbal warning." Credibility determinations generally are for the ALJ to make, and the weight to be given to the testimony of a witness is primarily a question for determination by the trier of facts. *Town & Country Elec., Inc. v. NLRB,* 106 F.3d 816, 819-20 (8th Cir. 1997). Nonetheless, a credibility finding is still reviewed under the substantial evidence standard, *Carleton College,* 230 F.3d at 1078, and La-Z-Boy asserts that the Board's finding regarding Phillips does not withstand review.

La-Z-Boy cites the testimony of supervisor Harris, who gave a different version of what transpired at the meeting, and points to the company's formal discipline log, which does not contain any record of discipline against Phillips. The company also emphasizes that the written record of the conversation among Phillips and his two supervisors does not use the words "verbal warning." The e-mail record says only that Allen and Harris "met with John" and "informed him" of the claims against him and the severity of the charge, and that Phillips denied the allegation and expressed an awareness of the company's policy. (J.A. 484).

We think this evidence is not necessarily inconsistent with the issuance of a verbal warning to Phillips, and it is not so powerful as to render the Board's finding unsupported by substantial evidence on the record as a whole. The testimony of Phillips and Harris conflicted, and the decision about which witness to believe is a classic matter of credibility for the trier of fact. The lack of formal disciplinary records does not preclude a finding that Phillips received a verbal warning. In particular, the General Counsel elicited testimony from supervisor Harris that a verbal warning would not always be noted on the company's standard disciplinary forms. (J.A. 300). The company's own employee handbook, moreover, does not use the magic words "verbal warning." Step One of the progressive disciplinary process is described merely as an "Oral Conference," (J.A. 478), a description that seems entirely consistent with the e-mail record prepared of the Phillips meeting.

La-Z-Boy also cites the company's employee handbook as support for its position that Phillips was not disciplined. The handbook describes the company's three-step discipline policy: Step One is an "Oral Conference"; Step Two involves a "Written Reminder"; and Step Three is "Decision Making Time." According to the handbook, "serious" and "major" violations "usually" trigger Step Two or Step Three discipline. (J.A. 479-80). In addition, Harris and Wilson testified on behalf of the company that "harassment" of a fellow employee is a "serious" or "major" violation that typically would be punished at Step Two or Step Three, and not by a verbal

warning. The company argues that if it believed that Phillips had threatened a co-worker in an effort to gain support for the union, such a threat would constitute a "serious" or "major" violation under the handbook. Thus, says the company, the Board's finding that Phillips was disciplined at Step One with a "verbal warning" is inconsistent with the Board's finding that the company believed Phillips had committed the alleged misconduct.

The difficulty with La-Z-Boy's reliance on the handbook is the substantial ambiguity that permeates the particular rules of conduct on which La-Z-Boy relies. The company emphasizes that the description of "serious violations" includes the following example: "Distribute or post literature of any kind in working areas during working time. All solicitation is prohibited during working time. For purpose of this rule, 'working time' does not include break periods and mealtimes." (J.A. 480). This example states clearly that distributing or posting literature usually would be a serious violation, but what about oral solicitation or oral "harassment"? It is unclear whether such conduct is within the scope of an example that "usually" would be treated as a serious violation warranting Step Two discipline. Similar ambiguity plagues the section on "major violations." La-Z-Boy relies on the handbook's statement that "[a]busive language directed at a fellow employee" is a major violation. But we do not know whether La-Z-Boy considered Phillips's alleged threat to reject units inspected by a co-worker to involve "abusive" language, which is commonly defined as "harsh insulting language." *Webster's Third New International Dictionary* 8 (2002). The company may well have concluded that the alleged statement violated company policy even though no "abusive language" was used. Again, therefore, the record does not necessarily show that Phillips's alleged conduct was a "major violation" as defined by the handbook.

The company's argument based on the handbook is weakened further by qualifying language in the rules of conduct. Even when there is a "serious violation," the rules state only that Step Two or Step Three discipline is "usually" appropriate.

The manual plainly states that "[m]anagement may, in its discretion, choose to attempt resolution of a disciplinary problem by beginning with Step One," and it specifies that the discussion of various violations is "not designed to be conclusive or to limit or restrict the rights of Management." (J.A. 479). Because the employee handbook clearly contemplates discretion in the disciplinary system, it does not render unsupported by substantial evidence the Board's credibility finding that Phillips was told to consider his meeting with supervisors a "verbal warning."

We conclude, therefore, that the Board's finding that La-Z-Boy subjected Phillips to Step One discipline was supported by substantial evidence. The allegation of misconduct by Phillips was the sole reason for the conference between Phillips and his supervisors that resulted in the verbal warning, so there is also substantial evidence to support the Board's conclusion that the warning was issued based on the company's belief that Phillips had committed misconduct. The Board thus correctly applied the law set forth by the Supreme Court in *Burnup & Sims*, and we enforce the Board's order with respect to Phillips.

## II.

The second incident involved Klint Guinn, a parts picker for La-Z-Boy. As a parts picker, Guinn was subject to a 40-hour scheduled work-week that was sometimes reduced by four hours (with a corresponding reduction in pay) if a full staff of parts pickers was not needed on Friday. According to Guinn's testimony, the four parts pickers, in order of seniority, were given the option to take a reduced schedule when a full staff was not required. Guinn said that the Friday schedule was finalized each Thursday afternoon when the supervisor, Jerry Von Ach, met with the employees and told them how many parts pickers were needed.

During the afternoon of Thursday, August 10, 2000, Guinn was absent from his workstation because he was acting as an observer in a union election. He then left the

plant that day without speaking to his supervisor about the Friday schedule. The following day, Guinn did not report for work, but he did come to the plant to pick up his paycheck. When Von Ach asked him why he did not "call in" to explain his absence, Guinn answered that he had "slept through two alarms." The following Monday, a fellow employee alerted Guinn that he had been assessed "attendance points" – a form of company discipline – for his absence on Friday. Guinn's supervisor informed him the next day that he had been assessed two attendance points for "no-call, no-show" attendance on the previous Friday.

The Board adopted the ALJ's rulings, findings, and conclusions regarding Guinn. In determining that the assessment of attendance points against Guinn violated Sections 8(a)(1) and 8(a)(3) of the Act, the ALJ applied the burden-shifting framework of *Wright Line.* The ALJ first found that the General Counsel had established a prima facie case that Guinn's protected activity was a motivating factor for the assessment of attendance points. The ALJ relied in part on previous findings by the Board concerning the company's conduct during a union organizing drive. Finding that the company's "conduct (or misconduct) was serious," the ALJ concluded that it "clearly warrants a finding that there was substantial anti-union animus" on the part of La-Z-Boy. The ALJ also cited evidence that supervisors treated Guinn differently from another parts picker while Guinn was engaged in union activity on August 10, and concluded that this unequal treatment supported an inference that Guinn's protected conduct was a motivating factor in the employer's disciplinary decision.

Turning to the question whether La-Z-Boy met its burden of demonstrating that the same disciplinary action would have taken place notwithstanding Guinn's union activities, the ALJ concluded that a "minimal effort would have been involved" in

sending another employee to ask Guinn whether he wanted to work, and that he could not imagine the company taking the same action "absent an agenda."[1]

La-Z-Boy challenges the Board's finding that its actions toward Guinn were motivated by anti-union animus. We reject the company's claim that the Board erred by considering La-Z-Boy's conduct during the union organizing drive. The Board generally may rely upon, take notice of, and use as background the findings and decisions that it makes in other cases. *See Paramount Cap Mfg. Co. v. NLRB,* 260 F.2d 109, 112 (8th Cir. 1958). The Board acknowledges, however, that it may not use such findings as the sole basis for its decision on motivation in a subsequent matter, *see Helena Labs. Corp.*, 225 N.L.R.B. 257, 257-58 (1976), so our focus in Guinn's case moves to the ALJ's finding of alleged unequal treatment of Guinn based on his involvement in protected activity.

The ALJ found that Guinn's supervisor, Von Ach, had established a practice of allowing the parts pickers to decide among themselves, based on order of seniority, who would work on Friday when fewer than all of the employees were needed. On

---

[1]La-Z-Boy argues that the unfair labor practice charge arising out the discipline of Guinn was untimely because it was not filed until February 13, 2001, which is more than six months after the date on which Guinn failed to appear for work, August 11, 2000. *See* 29 U.S.C. § 160(b). A charge is timely if it is filed within six months of the point at which the employee had "clear and unequivocal notice" that the unfair labor practice had occurred. *NLRB v. Dynatron/Bondo Corp.*, 176 F.3d 1310, 1317-18 (11th Cir. 1999); *NLRB v. Jerry Durham Drywall*, 974 F.2d 1000, 1004 (8th Cir. 1992). The Board applied the correct legal standard, so we review its factual findings for substantial evidence on the record as a whole. *NLRB v. Pub. Serv. Elec. and Gas Co.,* 157 F.3d 222, 228 (3d Cir. 1998); *Metromedia, Inc., KMBC TV v. NLRB*, 586 F.2d 1182, 1189 (8th Cir. 1978). We believe there was substantial evidence to support the Board's conclusion that Guinn did not have clear notice of the discipline until Von Ach orally informed him on August 15, 2000, that attendance points had been assessed.

August 10, Von Ach permitted the parts picker with the most seniority, Collinsworth, to elect whether he wanted to work on August 11. The ALJ found, however, that despite Guinn's status as the second most senior employee, "Von Ach did not accord him the opportunity to exercise his seniority allegedly because he was engaged in being an observer for the Union." As a result, the ALJ concluded that "Von Ach treated Guinn different than Collinsworth while Guinn was engaged in union activity, being an observer for the Union at a Board election."

We are not persuaded that substantial evidence supports the Board's conclusion that the company's failure to offer Guinn a day off was motivated by anti-union animus. It often is reasonable for the Board to infer animus from unequal treatment of similarly situated employees. *See*, *e.g.*, *Ky. Gen., Inc. v. NLRB*, 177 F.3d 430, 435-36 (6th Cir. 1999). But the ALJ's conclusion that Guinn was treated differently from another parts picker on Thursday, August 10, ignores the fact that Guinn and Collinsworth were not similarly situated. Collinsworth was present in the workstation, and supervisor Von Ach followed standard procedure by offering him the opportunity to decide whether to work on Friday. Guinn, however, had clocked out and left the workstation to be an observer at the union election.

While it is true that Von Ach did not seek to contact Guinn despite his absence from the workstation, there is no evidence in the record that it was normal company practice to contact *any* parts picker who was absent from the workstation on Thursday afternoon, whether for union business, a dental appointment, or a vacation day. Nor has the Board demonstrated that La-Z-Boy was under any legal duty to do more than treat an employee engaged in union activity in the same manner that it treats employees absent from the workstation for other valid reasons. Under those circumstances, we are not convinced that the company's failure to contact Guinn away from the workstation to discuss the Friday work schedule, which represented equal treatment of an absent employee, is substantial evidence of anti-union animus.

Alternatively, even assuming there was a prima facie case that the company was motivated by anti-union animus when it failed to offer Guinn a day off, we do not believe there is substantial evidence that La-Z-Boy's decision to impose attendance points for Guinn's "no-call, no-show" was similarly motivated. There is a disconnect between the ALJ's finding of unlawful motivation and Guinn's discipline. Guinn's real complaint is that he did not have an opportunity on August 10 to request a day off on August 11 when his rank in seniority should have entitled him to do so. But the ALJ did not explain why the company's alleged motivation on August 10, when it failed to offer Guinn a day off, should also be attributed to its decision to assess attendance points when Guinn failed to report for work on a scheduled workday. There is no evidence, for example, that La-Z-Boy somehow was armed with clairvoyant knowledge on August 10 that if Guinn remained on the work schedule for August 11, he would sleep through two alarms, thus creating the opportunity to impose discipline. Absent some articulation of how the company's alleged motive for declining to offer Guinn the day off is connected to its separate decision to impose attendance points for Guinn's failure to report to work on a scheduled workday, we do not believe the Board's order regarding Guinn can be sustained.

Guinn was disciplined because he failed to report for work on a day when his absence was not approved. The evidence is clear that Friday is a work day for parts pickers unless they are notified to take the day off. (J.A. 185, 216, 309). Guinn's absence was not excused: The ALJ specifically discredited Guinn's testimony that he informed supervisor Von Ach in advance that he planned to take off Friday, August 11 to bale hay. There is no evidence in the record suggesting that Guinn was treated differently from any other employee who missed work without calling the company. Accordingly, we reject as unsupported by substantial evidence the Board's conclusion that La-Z-Boy's decision to assess attendance points against Guinn was motivated by anti-union animus.

\*     \*     \*

For the foregoing reasons, we grant the Board's application for enforcement of its order with respect to Phillips, but deny the application as it pertains to Guinn. The case is remanded to the Board for modification of its order consistent with this opinion.

_____