# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

Nos. 09-1344/1518

———————

| | | |
|---|---|---|
| Cintas Corporation, | * | |
| | * | |
| Petitioner/Cross-Respondent, | * | |
| | * | |
| v. | * | On Petition for Review and |
| | * | Cross Application for Enforcement |
| National Labor Relations Board, | * | of an Order of the National |
| | * | Labor Relations Board. |
| Respondent/Cross-Petitioner, | * | |
| | * | |
| UNITE HERE, National Retirement | * | |
| Fund, | * | |
| | * | |
| Intervenor. | * | |

———————

Submitted: September 21, 2009
Filed: December 15, 2009

———————

Before MURPHY, JOHN R. GIBSON, and RILEY, Circuit Judges.

———————

MURPHY, Circuit Judge.

Cintas Corporation petitions for review of an order of the National Labor Relations Board (NLRB) finding that Cintas had interfered with its employees' exercise of rights protected under the National Labor Relations Act (NLRA) and imposing remedial measures, and the NLRB has filed a cross application for enforcement of its order. Intervenor Union of Needletrades, Industrial and Textile Employees (UNITE HERE, formerly UNITE) initiated the unfair labor charges. Since

substantial evidence supports the NLRB's decision and order, we deny the petition for review and grant the board's application for enforcement.

I.

Cintas supplies workplace uniforms to businesses throughout North America, and it is the largest domestic employer in the industrial laundry industry. UNITE HERE has been engaged in a nationwide organizing campaign seeking to represent Cintas employees since 2003. This case arises from incidents at Cintas facilities in Charlotte, North Carolina and Branford, Connecticut.

UNITE HERE filed unfair labor practice charges against Cintas based on its response to employee expressions of support for the union at the Branford and Charlotte facilities. Following an investigation, the General Counsel of the NLRB determined the charges had merit and issued a formal complaint against Cintas. The complaint asserted that Cintas had violated § 8(a)(1) of the NLRA, which makes it unlawful for an employer "to interfere with, restrain, or coerce employees" in the exercise of their rights to "self-organization" and "to organize, join, or assist unions." 29 U.S.C. §§ 157, 158(a)(1). The complaint also charged violations of § 8(a)(3) of the NLRA, which prohibits an employer from discriminating with respect to any term or condition of employment for the purpose of discouraging membership in any labor organization. 29 U.S.C. § 158(a)(3).

A hearing was held before an Administrative Law Judge (ALJ), after which the ALJ determined that Cintas had committed multiple violations of §§ 8(a)(1) and (3) of the NLRA and issued a recommended enforcement order. Cintas filed exceptions to the ALJ's findings that it had engaged in unfair labor practices and sought oral argument. The NLRB decided that the record and the briefing were sufficient for its

review. After that review, the board affirmed almost all of the ALJ's findings[1] and adopted a modified recommended enforcement order. Cintas now petitions for review of the NLRB's decision and order.

## A.

Disputes arose at the Cintas Charlotte facility in early 2004 about whether union sympathizers were violating the company's dress code and its no solicitation policies. Cintas' corporate dress code requires all production employees to wear uniforms while on the job. The uniforms are provided by the company and consist of dark navy blue pants and a light blue shirt. The dress code does not require employees to wear hats, but if they choose to, they must wear one of two company hats. The only jewelry female employees are permitted to wear are earrings.

Prior to February 2004 only one employee had been disciplined for violating the dress code policy while others had not been punished. One employee who regularly wore a colorful scarf while working was never disciplined or instructed to remove her scarf. Two other employees wore decorative pins on their uniforms on several occasions without being disciplined or required to remove the pins.

Eight employees wore prounion stickers on their uniform shirts during work on February 9, 2004. The stickers referenced Cintas' parent company and requested a one dollar pay raise, reading, "Farmer has BILLIONS. We want just $1." At the hearing before the ALJ employee Rosa Cruz testified that production floor supervisor Steven Coleridge had instructed her to remove the union sticker from her uniform shirt and throw it away. Cruz explained that she removed the sticker from her uniform and placed it on her arm instead. She testified that supervisor Coleridge told her that she

---

[1]The NLRB reversed certain findings of the ALJ related to an unfair labor practice charge not at issue in this appeal.

could not wear the sticker at all. He then denied that the incident had ever happened. None of the other employees were disciplined or instructed to remove the stickers.

A week later Employee Candy Galdamez wore a UNITE hat while working on the Charlotte facility's production floor. Coleridge instructed Galdamez to remove her hat and place it out of view because it violated company policy, and she complied. Coleridge later informed Charlotte plant manager Mark Stoy that he intended to issue Galdamez a written "verbal" warning for violating the company's no solicitation policy by wearing the hat and placing it in her work area. Both Stoy and Coleridge testified that employees were free to keep personal belongings at their work stations. Up to February 2004, no employee had been disciplined for violating the no solicitation policy or for having prohibited items in their work areas. The warning which was ultimately issued to Galdamez did not reference the no solicitation policy. Instead, the warning stated that it was given for "wearing a winter hat, black in color."

Several employees again wore stickers in support of the union on their uniforms during work on March 1, 2004. The stickers read, "Uniform Justice!", the name of the union's organizing campaign. Each of the employees received warnings in their employee files for wearing the union stickers in violation of the company's dress code. Galdamez received a written warning which also referenced her prior verbal warning for wearing the UNITE hat. Coleridge testified that although employees had not been disciplined for wearing prounion stickers in February, they were disciplined in March because by then he had decided that the stickers violated the company's dress code.

Three Charlotte employees also testified to the company's interference with their attempts to read flyers in support of union representation and to distribute the flyers to other employees. Cruz testified that she took a prounion flyer to work on February 10, 2004. After Coleridge saw Cruz in her work area with the flyer, he told her to put the flyer inside her wallet, take it home, and not show it to anyone. Coleridge testified that he had no memory of any such incident.

-4-

Employee Ana Callas testified that she set out about 20 prounion flyers in the Charlotte facility breakroom on February 20, 2004. One flyer described how much Cintas was spending to fight union efforts to organize its employees. The other flyer provided information about the few Cintas facilities which were unionized and how they provided better wages and health insurance. Acting at the direction of the Charlotte general manager, Coleridge and another supervisor confiscated the flyers from the breakroom for violation of the no solicitation policy. Cruz testified that she had already taken one of the flyers before the supervisors entered the breakroom. They attempted to take the flyer from her, but Cruz testified that she resisted and told them that she wanted to read it. Coleridge instructed her to put the flyer in her purse and said to read it at home because employees could not read the flyers in the plant.

After review of the no solicitation policy, the general manager of the Charlotte plant concluded that it had been an error to confiscate the prounion flyers. He testified that he raised the issue at three or four employee production meetings approximately two weeks after the incident, explaining that the confiscations had been improper and would not happen again. Several employees testified that they did not remember the company ever making any apologies and that the flyers were never returned to the breakroom. Cintas never posted any retraction about the lawfulness of the confiscation of the union flyers.

B.

Health concerns raised by union members and Cintas employees led to the unfair labor practice charges arising from the company's Branford, Connecticut facility. The Branford plant was seeking to expand its state wastewater discharge permit in 2005. While the permit was pending, union members wrote to the state environmental agency asserting that Cintas' application had failed to address its inadequate training and supervision of employees in respect to environmental hazards.

Cintas employees wrote separate but identical letters to two of the company's customers, Terminix and TruGreen, raising similar concerns. One prototype was signed by five Branford employees. A second was signed by 27 Cintas employees from other facilities. The letters complained that Cintas had not provided equipment to protect its employees from toxic chemicals on the uniforms prepared for Terminix and TruGreen, had not provided adequate training on how to handle the uniforms during the cleaning process, and had denied employee requests for information on the chemicals that might be found on the uniforms. The employees requested that such information be provided either to the Occupational Safety and Health Administration or directly to them.

Several months after the letters were sent to Terminix and TruGreen, questions were raised as to whether some of the employee signatures had been forged. The Branford plant manager called employee Berta Campos into his office. She was a Spanish speaker, and the plant manager talked to her with a supervisor acting as an interpreter. The manager asked Campos whether her signature on letters to Terminix and TruGreen was authentic. Campos replied that her signature appeared to have been forged. The manager then asked her to sign an affidavit confirming that in writing. An affidavit was prepared for her by the company which stated in relevant part that Campos had "never sent any letter" like the Terminix and TruGreen letters "to any customer of Cintas." At the end of the meeting, the plant manager warned Campos to "be careful, that her signature [was] being used on documents without her authorization."

C.

The union subsequently filed charges against Cintas with the NLRB, alleging that the company had committed unfair labor practices at its Charlotte and Branford facilities. The charges were consolidated and tried in a single hearing before an ALJ.

Cintas conceded its antiunion animus during the administrative hearing, but argued that UNITE HERE's national organizing campaign was unlawful and unprotected activity, and thus "any [employee] activity in support of the union is not protected" under the NLRA. The company sought to introduce exhibits and testimony relating to the union's national campaign. The General Counsel objected that evidence of the national campaign was irrelevant because all of the company's alleged unlawful conduct was directed at employees participating in classic forms of protected prounion activity. It was not the national union which was charged with unfair labor practices. Because of the charges brought against the company, the first issue was whether the individual employee acts were protected under the NLRA. If that were established, the next question would be whether the employees had engaged in any misconduct which would forfeit their statutory protections.

The ALJ concluded that the protected status of the employees' activities had to be determined on the basis of their own conduct and motives, not on unrelated actions by UNITE HERE. Although the ALJ excluded evidence about the union's corporate campaign, he permitted Cintas to make a written offer of proof concerning it.

Following the hearing, the ALJ concluded that Cintas had violated § 8(a)(1) of the NLRA when it instructed Charlotte employees to remove prounion stickers from their uniforms, prohibited an employee from displaying a union hat in her work area, interrogated Branford employee Campos about her signature on a letter to Cintas customers, and confiscated prounion flyers from a nonwork area during off time. 29 U.S.C. § 158(a)(1). The ALJ found that Cintas had also violated § 8(a)(3) by giving Charlotte employee Galdamez a written "verbal" warning for wearing a union hat and

by issuing written warnings to employees for wearing union stickers on their uniforms. 29 U.S.C. § 158(a)(3).

The ALJ recommended that Cintas be required to cease and desist from "interfering with, restraining, or coercing employees in the exercise of rights guaranteed them by Section 7" of the NLRA. The recommended enforcement order also mandated that Cintas remove from its files any references to the disciplinary actions taken against employees for wearing prounion insignia, post copies of notices at the Charlotte and Branford facilities explaining the NLRB's decision, and provide a sworn certification to the board that the required actions have been taken.

After review of the record, including the ALJ's decision and the briefs from Cintas and the General Counsel, the NLRB affirmed on all issues which are before the court. The board declined, however, to reach the issue of whether the interrogation of Campos about her alleged forgery violated the law since it had concluded that Cintas violated § 8(a)(1) by asking Campos to sign the prepared affidavit.

## II.

"Our standard of review affords great deference to the Board's affirmation of the ALJ's findings." Wal-Mart Stores, Inc. v. NLRB, 400 F.3d 1093, 1097 (8th Cir. 2005). We will enforce the NLRB's order "as long as the Board has correctly applied the law and its factual findings are supported by substantial evidence on the record as a whole." NLRB v. Rockline Indus., Inc., 412 F.3d 962, 966 (8th Cir. 2005). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." NLRB v. La-Z-Boy Midwest, 390 F.3d 1054, 1058 (8th Cir. 2004). While we are to give great deference to the factfinder's credibility assessments, they also must be supported by substantial evidence. Id.

A.

Cintas first argues that the ALJ erred by excluding relevant evidence and limiting the company to a written offer of proof about UNITE HERE's corporate campaign. Cintas also objects to the quashing of its subpoena seeking production of any communications between the national union and the employee witnesses. We review the evidentiary rulings of an ALJ under an abuse of discretion standard. Wright Elec., Inc. v. NLRB, 200 F.3d 1162, 1168 (8th Cir. 2000).

Cintas argues that the ALJ abused his discretion by refusing to admit exhibits and testimony about UNITE HERE's nationwide campaign. The company contends that the union's campaign is not protected activity under the NLRA because it involves coercive and disloyal tactics designed to force the company into an unfavorable neutrality and card check election agreement. Cintas argued before the ALJ and the board that employee acts expressing support for the union should not qualify as protected activity in light of UNITE HERE's national organizing campaign.

The NLRB adopted the General Counsel's position that the exhibits and testimony concerning UNITE HERE's national campaign were properly excluded by the ALJ as irrelevant to the unfair labor practice charges at issue. While an employer may assert that an employee's conduct is unprotected under the NLRA because it had an unlawful objective, the acts or objective of the national union cannot be imputed to an individual employee.

As the ALJ explained, the allegations in the complaint provided the grounds for the hearing so "the question of whether particular employees' activities were protected must be determined from their activities and motives, not what the Union intended and did at the national level." Cintas Corp., 353 N.L.R.B. No. 81, at *9 (2009). For that reason the ALJ excluded testimony about the corporate campaign, but he permitted Cintas to make a written offer of proof in support of its argument. On its review the

board affirmed these rulings, agreeing that the national union's campaign was not relevant to the individual activities at issue in the hearing.

We have been unable to find a reported case in which an employer has sought to use a union's national campaign as a defense to unfair labor practice charges involving individual employee activity, and Cintas has not cited any. For that matter, the only labor law cases discussing a union's corporate campaign appear to be cases between the employer and the union itself, rather than any involving expressions of union support by individual employees. See, e.g., BE&K Const. Co. v. NLRB, 246 F.3d 619 (6th Cir. 2001); Monterey Plaza Hotel Ltd. Partnership v. Local 483 of Hotel Employees, 215 F.3d 923 (9th Cir. 2000); Food Lion, Inc. v. United Food and Commercial Workers Intern. Union, 103 F.3d 1007 (D.C. Cir. 1997). The NLRB concluded that the question of whether an individual employee's acts are protected under the NLRA turns on the nature of that activity and the motive of the employee involved, not on union activities at a national level.

Here, Cintas had the opportunity to litigate whether the specific employee acts in question—wearing prounion insignia, distributing prounion flyers, and writing advocacy letters—were protected under the NLRA. The company also was able to question the employees as to their motives and to inquire whether their intent was to disparage or act disloyally toward Cintas. The proper venue for Cintas to raise its allegations about the national campaign by UNITE HERE would be through unfair labor charges against the union itself. We conclude that the NLRB did not abuse its discretion by upholding the ALJ's decision not to admit evidence of the union's national corporate campaign.

Cintas also argues that the ALJ erred by revoking a subpoena which called for the production of any notes of communications between the union and employee witnesses. Cintas asserts that the subpoena would have enabled the company to tie the employee acts to an allegedly unlawful national campaign. The ALJ revoked the

subpoena on the ground that the material sought was not producible for impeachment purposes under the board's rules and regulations.

Section 102.118(b) of the NLRB's Rules and Regulations is the exclusive source of discovery for witness statements in board proceedings. Smithfield Packing Co., Inc., 334 N.L.R.B. No. 5 (2001). To be producible, the material sought must qualify as one of the following:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him; or (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the party obligated to produce the statement.

29 CFR § 102.118. Cintas received copies of all witness statements and notes that complied with § 102.118(b).

The only notes which the ALJ did not require to be produced were those taken by union representatives about their interviews with Cintas employees at the Charlotte and Branford facilities. Those notes were not in the employees' own words, had not been "signed or otherwise adopted or approved" by them, and were not "a stenographic, mechanical, electrical, or other recording, or a transcription" of the interviews. The board has consistently refused to require production of third party notes which a witness has not signed, adopted, or otherwise approved. See, e.g., Nat'l Spec. Installations, 344 N.L.R.B. No. 2, at *191 (2005); Smithfield Packing Co., Inc., 334 N.L.R.B. at *34-35; Stride Rite Corp., 228 N.L.R.B. 224, 226 n.3 (1977). We conclude that the NLRB properly applied § 102.118(b) and that it did not err by refusing to require production of the union notes.

## B.

The NLRB concluded that Cintas had committed several violations of § 8(a)(1) of the NLRA, which makes it unlawful for an employer to interfere with any of the rights guaranteed in Section 7 of the Act, including the rights to self organize, form, join, or assist labor unions. See 29 U.S.C. §§ 157-58. Specifically, the board determined that Cintas violated § 8(a)(1) when it (1) instructed Charlotte employees to remove prounion stickers from their uniforms; (2) prohibited an employee from displaying a union hat in her work area; (3) confiscated prounion flyers from a nonwork area during nonwork time; and (4) interrogated Branford employee Campos about her signature on letters to Cintas customers.

Employees ordinarily have the right to wear union insignia while on the employer's premises. Wal-Mart Stores, 400 F.3d at 1097. This includes the right to wear union insignia on shirts. Id. "Absent special circumstances which justify a prohibition on wearing union insignia, an employer violates Section 8(a)(1) if it interferes with the wearing of union insignia by employees during an organizational campaign." NLRB v. Chem Fab Corp., 691 F.2d 1252, 1258 (8th Cir. 1982). Special circumstances may exist if an employer demonstrates that the display of union insignia may "unreasonably interfere with a public image that the employer has established," W San Diego, 348 N.L.R.B. 372, 373 (2006), but an employer violates § 8(a)(1) if it disparately enforces such a restriction by banning union insignia while allowing other insignia of a similar nature. Sears Roebuck & Co., 300 N.L.R.B. 804, 809-10 (1990).

The NLRB also concluded that Cintas had violated § 8(a)(1) by instructing Galdamez to remove a union hat from her work area and by requiring several employees to remove prounion stickers from their uniforms. Cintas contends that its restrictive dress code policy is justified by special circumstances. Because it is a provider of corporate uniforms, it argues, it is vital that the company's own employees reflect its desired corporate identity. In finding § 8(a)(1) violations, the board

-12-

assumed that special circumstances did exist, but concluded that Cintas selectively applied the uniform policy against employees based on their union sympathies.

Testimony from employees and the Charlotte general manager reflected that that facility's established practice was to allow employees to keep personal items in their work area as long as no safety issue arose. Cintas did not present evidence to counter this testimony or to show that Galdamez's union hat posed any safety issue. The board observed that two employees at the Charlotte facility were regularly allowed to wear holiday and decorative pins on their uniforms in violation of the company dress code policy and had not been instructed to remove them. Three employees testified as to this frequent practice. A supervisor also testified that he had seen employees wearing decorative pins, but not as frequently as the employees suggested.

The NLRB affirmed the ALJ's credibility findings. The ALJ found the employee testimony to be credible and not inconsistent with the supervisor testimony. In matters of credibility we generally refrain from substituting our own judgment for that of the ALJ, the factfinder in the case. NLRB v. MDI Commercial Servs., 175 F.3d 621, 632 (8th Cir. 1999). Our role on review is "solely to review the record to see if there is substantial evidence as a whole to support the Board's finding." Id. After that review we conclude that substantial evidence supports the NLRB's finding that Cintas selectively applied its dress code policy by requiring employees to remove union stickers and a union hat, in violation of § 8(a)(1). Airport Concessions, LLC, 346 N.L.R.B. 958, 960 (2006).

Cintas does not dispute that it violated the NLRA when it confiscated prounion flyers from the Charlotte facility breakroom and instructed employees that they could not read the flyers on nonwork time in a nonwork area. Nevertheless, the company claims that its apology within two weeks of the incidents were sufficient to cure the violation. Under certain circumstances an employer may relieve itself of liability for

-13-

unfair labor practices by repudiating the conduct. <u>Wilson Trophy Co. v. NLRB</u>, 989 F.2d 1502, 1511 (8th Cir. 1993). To be effective, the repudiation must be timely, unambiguous, and specific to the unlawful conduct. <u>Passavant Memorial Area Hosp.</u>, 237 N.L.R.B. 138, 138-39 (1978). Additionally, the employer "must adequately publicize the repudiation to all employees involved" and must "assure employees that the employer will not interfere with their protected rights in the future." <u>Wilson Trophy</u>, 989 F.2d at 1511.

Measured against these requirements, Cintas' repudiation was insufficient to cure the unlawful confiscation of union flyers. The repudiation was not adequately publicized. One supervisor testified that he spoke at three or four production meetings, during which he apologized and explained that employees were allowed to read prounion flyers during off time in nonwork areas. The supervisor was unable to provide documentation of the meetings, however, and several employees testified that they did not recall any meeting in which the confiscations had been discussed. No other repudiation was published to the employees, and the confiscated flyers were never returned.

Cintas argues that its interrogation of Branford employee Campos was lawful and that the NLRB's conclusion to the contrary was not supported by substantial evidence. Campos was questioned by the Branford plant manager and a supervisor concerning the authenticity of her signature on letters to two Cintas customers. After Campos stated that her signature appeared to have been forged, the plant manager asked her to sign an affidavit. The board concluded that the affidavit amounted to unlawful interrogation under § 8(a)(1) because it was not limited in scope to the letter bearing her forged signature. The prepared affidavit asserted that Campos "had not signed *any* letter to *any* customer" of Cintas. <u>Cintas Corp.</u>, 353 N.L.R.B. at *4 (emphasis in original). The board reasoned that this amounted to an unlawful "attempt to elicit information about [Campos'] union sympathies and protected activity beyond the scope of her forged signature on one letter." <u>Id.</u>

-14-

The NLRB has consistently held that when an employer solicits an employee to sign a document which forces the employee to declare whether or not she is sympathetic to a union, the employer has engaged in coercive interrogation in violation of § 8(a)(1). See, e.g., Gaetano & Assoc., 344 N.L.R.B. No. 65, at *15 (2005); Beverly California Corp., 326 N.L.R.B. 232, 234 (1998). The record supports the board's conclusion that the affidavit pressured Campos to make an observable choice demonstrating her support or rejection of the union. Campos was questioned in the Branford plant manager's office by the manager and a supervisor about a union affiliated letter. The manager then asked her to sign an affidavit stating that she had not signed any such letter to any Cintas customer.

Considering Cintas' conceded antiunion animus, the nature of the information sought, the identity of the questioner, and the place of the questioning, the record supports the NLRB's conclusion that asking Campos to sign the affidavit amounted to coercive interrogation in violation of § 8(a)(1). See NLRB v. Gissel Packing Co., 395 U.S. 575, 617 (1969) (relevant inquiry considers "the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear.")

In addition to the §8(a)(1) violations, the ALJ found, and the NLRB affirmed, that Cintas had violated § 8(a)(3) of the NLRA, which makes it unlawful for an employer to discriminate in regard to any term or condition of employment in order to discourage membership in any labor organization. See § 158(a)(3). This section makes it an unfair labor practice for an employer to discipline an "employee in order to discourage [her] from engaging in union activities." Rockline Indus., 412 F.3d at 966.

-15-

The NLRB concluded that Cintas violated § 8(a)(3) by issuing verbal and written warnings to employees who expressed support for the union by wearing prounion stickers and a union hat when the company had not previously disciplined employees for similar behavior. Waterbury Hotel Mgmt., LLC, 333 N.L.R.B. 482, 545-46 (2001) ("the manner in which the [employer] dealt with employees wearing union pins, as opposing to employees wearing other 'unauthorized pins,' evidences discriminatory enforcement."). In finding disparate treatment, the ALJ relied in large part on the testimony of the general manager of the Charlotte facility. The manager testified that employees typically wore improper clothing about once a month and were instructed to remove the clothing but not disciplined. The manager and several employees also testified that two Charlotte employees who regularly wore colorful scarves had never been disciplined, nor had the two employees who regularly wore decorative pins.

Cintas argues that isolated incidents of failure to enforce a policy do not establish disparate application of its dress code policy, but it did not produce examples of regular enforcement of the policy. The company introduced only one instance of discipline imposed pursuant to the dress code policy, and that had occurred three years prior to the incidents at issue here. Testimony that employees regularly disobeyed the dress code policy without consequence supports the NLRB's conclusion that the employees disciplined for wearing prounion stickers and a union hat were singled out because of their union sympathies. Waterbury Hotel, 333 N.L.R.B. at 546. Substantial evidence, including the testimony of the Charlotte general manager and several employees, supports the NLRB's conclusion that Cintas violated § 8(a)(3) of the NLRA by selectively applying its dress code policy to discipline employees who engaged in the protected activity of promoting the union.

## III.

Based on the record and the previous analysis, Cintas Corporation's petition for review is denied and the cross application of the NLRB for enforcement of its order is granted.

_____