# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2516

_____

National Labor Relations Board

*Petitioner*

v.

Anderson Excavating, Company

*Respondent*

_____

National Labor Relations Board

_____

Submitted: January 16, 2019
Filed: May 31, 2019

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

SMITH, Chief Judge.

The National Labor Relations Board ("Board") seeks enforcement of its order finding that Anderson Excavating Company ("Anderson") violated Section 8(a)(5) and (1) of the National Labor Relations Act (NLRA). The Board's order concluded that Anderson violated the NLRA by failing to make contractually mandated contributions to the Contractors, Laborers, Teamsters and Engineers Health and Welfare and Pension Fund ("CLT&E Funds") and the Training Fund of Local 571 of

the International Union of Operating Engineers ("Union"). Anderson cross-petitions for review of the Board's order, arguing that the Board erred in failing to find that the Union's unfair labor practice charge against it was time-barred. The Board responds that the Union's charge was timely filed within six months of Anderson's clear and unequivocal repudiation of its collective bargaining obligations. We deny Anderson's petition and grant the Board's application for enforcement of its order.

## I. *Background*

Anderson is a construction company based in Omaha, Nebraska, established by Virgil Anderson ("Virgil"). Virgil and his wife, Virginia Anderson ("Virginia"), co-own the company. The Union represents heavy equipment operators. It negotiates collective bargaining agreements (CBA or CBAs) on their behalf with a group of large construction employers in Omaha. Smaller employers, such as Anderson, may then adopt those CBAs. The CBAs set the employees' terms and conditions of employment. The CBAs also require employers to make contributions to several benefit funds and withhold and remit dues to the Union.

Anderson has been a signatory to CBAs with the Union for many years. In 1996, Anderson executed a Heavy Highway Agreement with the Union. The agreement contained a recognition clause explicitly acknowledging the Union as the exclusive collective bargaining representative of the employees in the bargaining unit described in the agreement. In 2004, Anderson executed another Heavy Highway Agreement with the Union.

After the 2004 Heavy Highway Agreement expired in 2006, it was superseded by CBAs covering the periods 2006–2008, 2008–2010, 2010–2012, 2012–2014, and 2014–2018. The Union negotiated each CBA with a group of large construction employers in the Omaha area. Following the ratification of each CBA, the Union sent a one-page document to all signatories to complete. Anderson has not signed or

returned any of these documents since 2004. Thus, the 2004 Heavy Highway Agreement was the last CBA that Anderson executed.

Nevertheless, Anderson continued adhering to the CBAs. First, Anderson sought and received employee referrals from the Union's hiring hall. Second, it paid employees in accordance with the CBAs. Third, Anderson made the contributions required by the CBAs on behalf of its employees to the CLT&E Funds[1] and Training Fund. Fourth, Anderson regularly submitted reports signed by Virginia in her capacity as Anderson's president.[2] These reports contained a certification that the funds were being paid on behalf of employees who had performed work covered by a CBA between Anderson and the Union. Fifth, Anderson remitted employee dues to the Union in accordance with the amounts required under each agreement and submitted corresponding reports signed by Virginia.

In 2010, the CLT&E Funds audited Anderson and found that it owed the CLT&E Funds $2,612.14. Anderson remitted this amount to the CLT&E Funds. In 2013, the CLT&E Funds conducted another audit. It determined that Anderson failed to make contributions for certain employees who had, in the CLT&E Funds' opinion, performed work covered by the relevant CBA. The audit found Anderson $83,000 in arrears.

On March 25, 2014, the CLT&E Funds and the Union filed suit against Anderson in federal district court under the Labor Management Relations Act to recover the arrearage. *See* Complaint, *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-CV-96 (D. Neb. March 25, 2014), ECF No. 1. The complaint alleged

---

[1]The CLT&E Funds are composed of two trusts: a health-and-welfare trust and a pension trust.

[2]In approximately 2012 or 2013, Virgil retired, and Virginia, his wife, began operating Anderson.

that Anderson executed the 2004 Heavy Highway Agreement with the CLT&E Funds and the Union and agreed to be bound by trust agreements requiring contributions to the CLT&E Funds. In its answer filed on May 16, 2014, Anderson "admit[ted] it reported hours and made employer contributions to the [CLT&E Funds]." Defendant Anderson Excavating Co.'s Answer and Affirmative Defenses at 2, ¶ 9, *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-CV-96, (D. Neb. May 16, 2014), ECF No. 10. Anderson also set forth the affirmative defense that "[t]he [CBA] the action is based upon terminated on April 30, 2006, and is therefore no longer a valid agreement." *Id.* at 3. Anderson also relied on the additional affirmative defense that Anderson "is not a party to the Trust Agreements, and is not bound by the same." *Id.*

In its Rule 26(f) discovery report[3] filed on June 17, 2014, Anderson took the position that "[e]mployees identified by the audit were improperly classified as operating engineers and were not performing covered work and are not covered by the [CBA] between Defendant Anderson Excavating Co., and the International Union of Operating Engineers, Local 571." Rule 26(f) Report at 3, *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-CV-96 (D. Neb. June 17, 2014), ECF No. 13. The Rule 26(f) report also reiterated Anderson's affirmative defense that the CBA referenced in the complaint expired on April 30, 2006, and was no longer valid.

Despite its claimed defense, prior to and during the course of the litigation, Anderson remitted dues to the Union, made payments to the CLT&E Funds and the Training Fund, and otherwise complied with the 2014–2018 CBA. First, Anderson

---

[3]Federal Rule of Civil Procedure "26(f) requires that the attorneys of record arrange a conference, outline a discovery plan, and submit the discovery plan to the court in the form of a written report within 14 days." *Siems v. City of Minneapolis*, 560 F.3d 824, 825 n.2 (8th Cir. 2009).

continued remitting dues and submitting employer remittance reports signed by Virginia.[4]

Second, Anderson continued making contributions to the Training Fund and submitted Training Fund Reports for all of 2014 and for January, February, and March 2015.[5] The reports contained the following certification signed by Virginia:

> I certify that the individuals identified on this report are employees of the company who, during the reporting period specified, performed work covered by a [CBA] between this employer and the applicable union. "Employee" is defined as any person performing work covered by the [CBA] between the employer and the union which agreement provides for payments to the IUOE Local 571 Training Fund on behalf of such employee.

Petitioner's App. at 271–287.

In addition, Anderson continued making contributions to the CLT&E Funds and submitted CLT&E Fringe Benefit Reports. The reports contained a signed certification from Virginia substantially similar to the one contained in the Training Fund Reports. *See* Petitioner's App. at 308–326.

---

[4]The remittance reports were filed with the Union on May 30, 2014; June 30, 2014; July 30, 2014; August 29, 2014; September 30, 2014; October 29, 2014; November 30, 2014; December 30, 2014; January 30, 2015; February 25, 2015; March 27, 2015; and April 30, 2015.

[5]The record also contains Training Fund Reports from when Anderson resumed making payments in November and December 2015.

Finally, when a new CBA went into effect in 2014, Anderson paid the new CBA's increased CLT&E contribution amount, which increased from $3.65 to $3.95 per hour.[6]

On May 20, 2015, Virgil and Virginia gave depositions in the federal lawsuit. Both denied that they had any CBAs with the Union and stated that they were making payments to the union funds and remitting union dues based on an unspecified and unwritten agreement with their employees. The same month, following Virgil's and Virginia's depositions, Anderson stopped making trust fund contributions and remitting dues to the Union.

On June 19, 2015, Larry Murray, the CLT&E Funds Administrator, notified Virginia via letter that counsel for the CLT&E Funds informed him of Anderson's position that it had no CBA relationship with the Union. Because Anderson had "advised of the termination of the [CBA] obligations with [the Union]," Murray explained that counsel instructed him "that it is unlawful for these Plans to accept employer contributions or provide benefits pursuant to the Trust Agreements and Plan documents." Respondent's App. at 84. Murray stated that "no further payments can lawfully be accepted or benefits provided." *Id.*

Aaron Fichter, the Union's Business Manager, notified Union members that he, too, was "advised that it is not lawful for [the CLT&E Funds] to accept Anderson Excavating contributions or provide benefits pursuant to the Trust Agreements and Plan documents." Petitioner's App. at 355. Fichter explained the legal dispute between

---

[6]The record shows that for the pay period of June 1, 2014, to June 30, 2014, Anderson contributed $3.65 per hour for the Pension Fund portion of the CLT&E Funds. Petitioner's App. at 308. Then, for the pay period of July 1, 2014, to July 31, 2014, Anderson changed the contribution amount to $3.95 per hour. *Id.* at 309. This change in the contribution amount occurred during the time when the new CBA went into effect.

the CLT&E Funds and Anderson and the resulting nonacceptance of contributions as based on Anderson's lack of a CBA and the inability of CLT&E Funds to accept contributions from a non-signatory company.[7]

On July 16, 2015, the Union filed a charge with the Board alleging that Anderson violated the NLRA by denying it was bound by any CBA with the Union. It amended its charge on January 22, 2016. The amended charge alleged that Anderson violated the Act by withdrawing recognition from the Union and repudiating the parties' 2014–2018 CBA by stating it was not bound by the agreement and by failing to abide by its terms, including provisions requiring payments to the CLT&E Funds and the Training Fund and the remittance of dues to the Union.

In November 2015, Anderson resumed making payments and remittances in accordance with the 2014–2018 CBA.[8]

On August 11, 2016, the district court concluded that Anderson was "liable to the plaintiffs for delinquent contributions under 29 U.S.C. § 1145." Findings of Fact and Conclusions of Law at 22, *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-CV-96 (D. Neb. Aug. 11, 2016), ECF No. 77. In reaching this conclusion, the

---

[7]With regard to the CLT&E Funds, the administrative law judge (ALJ) noted that, following the June 2015 letter to Anderson, "[t]he trust and the Unions subsequently accepted contributions and remittances due from [Anderson]." *Anderson Excavating Co. & Int'l Union of Operating Eng'rs Local 571*, No. 14-CA-156092, 2016 WL 4426389, at *1 n.6 (N.L.R.B. Aug. 19, 2016). The ALJ "assume[d] they did so on the theory that [Anderson] is a signatory contractor, regardless of what the Andersons stated in their depositions. Neither the trusts, the Union nor [Anderson] have been entirely consistent in this matter." *Id.*

[8]When Anderson resumed making these payments and remittances, the Union initially rejected them because they were not accompanied by signed reports. Anderson then signed the reports and resubmitted them. The Union then accepted the payments.

district court found that Anderson "manifested acceptance to each successive CBA by . . . . continuously pa[ying] hourly wage rates in accordance with each CBA, withh[olding] administrative dues in accordance with each CBA, and ma[king] contributions to the [CLT&E Funds and Training Fund] in accordance with the rates set forth in each CBA." *Id*. at 13–14. The court also noted that Anderson "asked for guidance on withholding administrative dues, sought referrals from the Union hiring hall, and complied with audits" as further evidence Anderson "manifest[ed] its acceptance to each of the CBAs succeeding the 2004 CBA." *Id*. at 14.

On August 19, 2016, the administrative law judge (ALJ) concluded Anderson "violated Section 8(a)(5) and (1) [of the NLRA] in withdrawing recognition from the Union and repudiating its collective bargaining obligations," "is bound by the 2014–2018 Heavy Highway Agreement," and "violated Section 8(a)(5) and (1) [of the NLRA] by repudiating the terms and conditions of the 2014–2018 [CBA]." *Anderson Excavating Co.*, 2016 WL 4426389 (italics omitted). The ALJ rejected Anderson's argument that the Union's charge against it was "time barred because the Union was on notice that [Anderson] was withdrawing recognition as of May 2014 when it filed its Answer to the Union's District Court complaint." *Id.* The ALJ found "that the Union did not have clear and unequivocal notice of . . . Anderson's withdrawal of recognition and repudiation of its collective bargaining obligations until May 2015." *Id*. In May 2015, Anderson ceased making "all the requisite payments and remittances to the Union and the Trust Funds." *Id*.

The Board affirmed the ALJ's rulings, findings, and conclusions. To remedy Anderson's violations, the Board ordered Anderson to cease and desist from the unfair labor practices found. It also ordered Anderson to cease and desist from interfering with, restraining, or coercing employees in the exercise of their rights under Section 7 of the NLRA. And, the Board ordered Anderson to recognize the Union as the exclusive collective bargaining representative of its bargaining unit employees and to honor and comply with the 2014–2018 Heavy Highway Agreement. Finally, the Board

ordered Anderson to make employees whole for any monetary losses they may have suffered as a result of Anderson's repudiation of the 2014–2018 Heavy Highway Agreement, including any adverse tax consequences of receiving a lump-sum backpay award; make any payments to the CLT&E Funds and Training Fund that it had failed to make since May 20, 2015; reimburse the Union for dues it had failed to remit; and post a remedial notice.

## II. *Discussion*

Anderson challenges the Board's order, arguing that (1) the Union's July 16, 2015 unfair labor practice charge was untimely; (2) Virgil's and Virginia's deposition testimony in the federal lawsuit improperly served as the basis for the unfair labor practice charge; and (3) any of Anderson's conduct that could be construed as an unfair labor practice arose because of the Union's actions, threats, or inducements.

"We review the Board's findings of fact for substantial evidence on the record as a whole, that is, for such relevant evidence as a reasonable mind might accept as adequate to support a finding." *Cellular Sales of Mo., LLC v. NLRB*, 824 F.3d 772, 775 (8th Cir. 2016) (internal quotations omitted). We review de novo the Board's legal conclusions. *Id.*

### A. *Timeliness of Charge*

Anderson argues that the Union's July 16, 2015 unfair labor practice charge was untimely because it was filed more than six months after Anderson's unequivocal repudiation of the CBA in its May 16, 2014 answer to the federal lawsuit.

"The [NLRA] requires that a party, wishing to assert the existence of a violation of the Act, pursue its right in a timely manner." *NLRB v. Jerry Durham Drywall*, 974 F.2d 1000, 1003 (8th Cir. 1992). Section 10(b) of the NLRA provides "[t]hat no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." 29 U.S.C. § 160(b).

"The six-month limitation period [set forth in Section 10(b)] begins to run when the charging party receives 'clear and unequivocal notice that the unfair labor practice had occurred.'" *NLRB v. Seedorff Masonry, Inc.*, 812 F.3d 1158, 1167 (8th Cir. 2016) (quoting *NLRB v. La-Z-Boy Midwest*, 390 F.3d 1054, 1061 n.1 (8th Cir. 2004)). Anderson Excavating "has the burden to establish this defense by proving that [the Union] was put on notice more than six months before its [July 16, 2015] charge . . . ." *Id.*

"[A] repudiation need not be an express, written repudiation but instead can be manifested in a variety of ways." *Jerry Durham Drywall*, 974 F.2d at 1004. "Numerous Board and court decisions establish that a . . . CBA may be repudiated by 'open and notorious acts by one party, known to the other, which are inconsistent with the continuance of the contract.'" *Seedorff Masonry, Inc.*, 812 F.3d at 1167 (quoting *Contractors Health & Welfare Plan v. Harkins Constr. & Equip. Co.*, 733 F.2d 1321, 1326 (8th Cir. 1984)). "[W]here an employer repeatedly fails to make union benefit fund contributions as required by a [CBA], the union is put on notice that the employer has repudiated the agreement, thus triggering the commencement of the section 10(b) period for filing a charge." *Jerry Durham Drywall*, 974 F.2d at 1004 (holding employer's "failure to ever comply with any of the terms of the contract and his continuing failure to pay into the Union's fringe benefit funds constituted a total repudiation of the contract").

But "actual or constructive notice [of repudiation] will not be found where a party sends conflicting signals or otherwise engages in ambiguous conduct." *Masonic Temple Ass'n of Detroit*, 364 NLRB No. 150, 2016 WL 7033086, at *1 n.1 (Nov. 29, 2016), *enforced mem.*, No. 17-1108, 2017 WL 6514638 (6th Cir. Dec. 4, 2017). Thus, when an employer's words and actions conflict, the employer has failed to manifest clear and unequivocal notice of the employer's contract repudiation. *See, e.g.*, *Positive Elec. Enters., Inc. & Int'l Bhd. of Elec. Workers, Local 43*, 345 NLRB 915, 919 (2005) (concluding that employer's statement to union representative "that he was not

financially ready to begin hiring at that time" did not constitute clear and unequivocal notice of repudiation because "his actions otherwise communicated that he was complying with the terms of the agreement" by "secur[ing] the bond and certificate of insurance as requested by [the union representative] and designat[ing] the Union Trust Funds as the beneficiary"); *cf. Twin City Pipe Trades Serv. Assoc. v. Frank O'Laughlin Plumbing & Heating Co.*, 759 F.3d 881, 885–86 (8th Cir. 2014) (holding even if termination of employer's participation in CBA was a valid defense to an ERISA fringe benefits collection action, employer did not unequivocally express the clear and explicit intent necessary to terminate participation in CBA necessary for such defense to apply; employer continued to make fringe benefits contributions while new CBA was being negotiated, and two letters it sent to union officials purportedly terminating its participation in the CBA contained inconsistent termination dates and did not reference the CBA's 90-day notice provision).

Here, Anderson argues that it manifested its clear and unequivocal notice of its repudiation of the 2014–2018 Heavy Highway Agreement on May 16, 2014, in its answer to the federal lawsuit. It further argues that "any confusion [about its position] was surely eliminated when the Union's counsel signed [the] Rule 26(f) report and filed it . . . on June 17, 2014." Respondent's Br. at 23. If true, then, the Union's unfair labor practice charge is untimely, as it was filed on July 16, 2015—more than six months after Anderson filed its answer.

The record, however, supports the ALJ's conclusion, affirmed by the Board, that "Anderson's conduct in this case was ambiguous and thus failed to give the Union the requisite notice." *Anderson Excavating Co.*, 2016 WL 4426389. Anderson's answer in May 2014 set forth Anderson's position that a valid CBA no longer existed and that Anderson was not bound by the Trust Agreements. The Rule 26(f) report filed in June 2014 reiterated this position. "One could construe the May 2014 Answer and repudiation of all [CBAs] with the Union as withdrawal of recognition." *Id*. But Anderson's subsequent conduct conflicted with the position articulated in its answer

-11-

and Rule 26(f) report. As the ALJ found, "Anderson continued to make all the requisite payments and remittances to the Union and the Trust Funds until May 2015." *Id*. Notably, when Anderson submitted contributions to the CLT&E Funds and the Training Fund, its reports contained a signed certification by Virginia indicating that the employees "performed work covered by a [CBA] between this employer and the applicable union." Petitioner's App. at 271–287, 308–326.

Anderson's submission of "all the requisite payments and remittances to the Union and the Trust Funds [continued] until May 2015." *Anderson Excavating Co.*, 2016 WL 4426389. Thus, it was not until May 2015—when Anderson ceased making payments and remittances—that Anderson's litigation position and conduct aligned. As a result, the Union's July 16, 2015 unfair labor practice charge was properly filed within the six-month statute of limitations. *See* 29 U.S.C. § 160(b).[9]

B. *Deposition Testimony*

Anderson next argues that the Board erred in finding that Virgil's and Virginia's deposition testimony in the federal case could serve as the basis for the Union's unfair labor practice charge.

The record does not support Anderson's argument that the deposition testimony served as the basis for the charge. Instead, the Board found that "even without relying on the depositions, the record establishes that [Anderson] violated Sec. 8(a)(5) by withdrawing recognition from the Union and by repudiating the terms of the 2014–2018 Heavy Highway Agreement." *Anderson Excavating Co.*, 365 NLRB No.

[9]The Union filed its original charge on July 16, 2015. It filed an amended charge on January 22, 2016. "It is well settled that the timely filing of a charge tolls the time limitation of Section 10(b) as to matters subsequently alleged in an amended charge which are similar to, and arise out of the same course of conduct, as those alleged in the timely filed charge." *Pankratz Forest Indus.*, 269 NLRB 33, 36–37 (1984), *aff'd mem.*, 762 F.2d 1018 (9th Cir. 1985).

63, 2017 WL 1434211, at *1 n.2 (Apr. 20, 2017). As explained *supra*, Anderson's May 2014 answer and June 2014 Rule 26(f) report showed withdrawal of its recognition. Anderson then clearly and unequivocally communicated its repudiation by ceasing to make the required payments in May 2015.

## C. *Inducement to Act*

Finally, Anderson argues that the Board erred in failing to find that the Union induced its failure to pay in May 2015. Anderson contends the Union's declaration that it would refuse to accept payments based on Anderson's prior declaration that it was not bound by a CBA triggered its nonpayment. In support of its argument, Anderson references the letter that Fichter, the Union's Business Manager, wrote to Union members notifying them that the Union had been advised that it would be unlawful for the CLT&E Funds to continue accepting contributions from Anderson based on Anderson's position that there was no CBA with the Union. But Fichter's letter also explained that "[t]his is not the opinion of [the Union]; there is no record of a written termination of the [CBA] and/or collective bargaining relationship between Anderson Excavating and [the Union]." Petitioner's App. at 355.[10] Therefore, we reject Anderson's argument that the Union somehow induced Anderson not to make contribution payments.

---

[10]Anderson also cites a deposition *inquiry* from the Union's attorney to Virginia in support of its argument that the Union induced Anderson not to make contributions. Respondent's App. at 71 ("Are you aware it is unlawful to make payments in the absence of a [CBA] with the union to the fringe benefit funds?"). This inquiry does not set forth the Union's legal position or otherwise inform Anderson that the Union would no longer accept contributions.

### III. *Conclusion*

Accordingly, we deny Anderson's petition and grant the Board's application for enforcement of its order.

_____